MICHIANA SHORES ESTATES, INC., v. ROBBINS.

LONG BEACH CO. v. SAME.

1. COVENANTS—SINGLE RESIDENCE.

> The erection of a dwelling house for two or more families is in violation of restrictive covenant in deeds that "one residence only shall be erected on each lot," and such prohibition bars its occupancy and use by more than one family.

2. INJUNCTION—VIOLATION OF BUILDING RESTRICTION—CONSENT.

Defendants who knowingly violated building restrictions without any reason to suppose plaintiff subdivision owner was consenting thereto cannot equitably complain they were allowed to progress so far with the construction before being enjoined.

3. COVENANTS—ESTOPPEL.

Mere tolerance of unlawful use of a building is not normally a sufficient basis for estoppel.

4. INJUNCTION—VIOLATION OF BUILDING RESTRICTION—ESTOPPEL—BURDEN OF PROOF.

In suit to enforce strict legal right to have lots in subdivision devoted to single residences in accordance with covenants in deeds, record *held,* to sustain finding of trial court that defendants had failed to sustain their burden of proving affirmatively that plaintiff or its agents had knowledge of the violation at such a date that failure to begin suit immediately precluded enforcement of the right.

5. SAME—DELAY—CHANGE OF POSITION.

Mere delay and acquiescence in the violation of a building restriction will not defeat the right thereafter to enforce the restriction where there is nothing to show detrimental change of position by reason of the delay.

6. COVENANTS—NONRESIDENTIAL USE—USE FOR DUPLEX OF PROPERTY RESTRICTED TO SINGLE RESIDENCES—ACQUIESCENCE.

Acquiescence by conduct to the erection or long use of building for nonresidential purposes on property which has been restricted to residential use is not analogous to reasonable delay in objecting to the occupancy of a single dwelling by two or more families in violation of a restriction.

7. SAME—GENERAL WAIVER—EVIDENCE.

In suit to enforce covenant in deed restricting use of lot to single residences, defendants' claim of general waiver of the restriction in the subdivision because of the use by many others of single homes for more than one family *held,* unsupported where there were only three other violations shown and plaintiff claimed steps were being taken to compel other violators to observe the restrictions.

8. APPEAL AND ERROR—SAVING QUESTION FOR REVIEW—SPECIAL RECORD OF REJECTED TESTIMONY.

To preserve for proper review the question as to admissibility of testimony asserted to have been pertinent to a matter equally

within the knowledge of a deceased officer of plaintiff corporation, particularly in an equity suit, correct practice requires that a special record of the offered testimony should have been made (3 Comp. Laws 1929, § 14219).

9. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—HARMLESS ERROR.

In suit to enforce building restriction, error, if any, in excluding testimony of witness on ground that it was as to a matter equally within the knowledge of a deceased officer of plaintiff corporation, *held*, not prejudicial nor ground for reversal where it was sought to show by witness who was an attorney and a close relative of defendants and found to be their agent that at time deceased officer handed him a written notice relative to violation of restriction and forfeiture of lot for such improper use, deceased orally revoked such restriction (3 Comp. Laws 1929, § 14219).

Appeal from Berrien; Evans (Fremont), J. Submitted June 8, 1939. (Docket Nos. 40, 41, Calendar Nos. 40,456, 40,457.) Decided September 6, 1939.

Separate bills by Michiana Shores Estates, Inc., and Long Beach Company, Indiana corporations, against Florence Robbins and Isadore Zeplovitz and by Long Beach Company, an Indiana corporation, against Florence Robbins, Gertrude Zeplovitz and Isadore Zeplovitz to restrain violation of certain restrictions on dwellings and other relief. Michiana Shores Estates, Incorporated, ordered withdrawn as a party plaintiff. Cases consolidated for trial and appeal. Decrees for plaintiff. Defendants appeal. Affirmed.

*White & White,* for plaintiff.

*Charles W. Gore,* for defendants.

BUTZEL, C. J. Upon dismissal of Michiana Shores Estates, Inc., as coplaintiff, the Long Beach Company became the sole complainant in two suits to

enforce certain restrictions on lots located in sub-division 3 of Michiana Shores. One was brought against Florence Robbins, as owner of lot 9 in block 18, and against Isadore Zeplovitz, her father and agent; the other, involving restrictions on an adjoining lot 8, joins Gertrude Zeplovitz, a co-owner, as an additional defendant. The two lots are situated in New Buffalo township, Berrien county, Michigan, in a subdivision lying close to the Michigan-Indiana border, and which was designed for high grade summer homes. The deeds to both lots contained restrictive covenants, including the following:

"One residence only shall be erected on each lot."

The two cases were tried together and presented to us as if consolidated, although in the course of discussion certain factual differentiation will be made. The trial court found a violation of the restriction and enjoined further occupancy of the two houses on the respective lots by more than one family.

It is clear, as is conceded by defendants who appeal to this court, that erection of a dwelling house for two or more families must be held a violation of the language of the deeds limiting structures to "one residence only." *Schadt* v. *Brill,* 173 Mich. 647 (45 L. R. A. [N. S.] 726); *Killian* v. *Goodman,* 229 Mich. 393. Likewise, prohibition of erection of the building bars its occupancy and use by more than one family. *Boston-Edison Protective Ass'n* v. *Goodlove,* 248 Mich. 625. Admittedly two or more families have occupied the dwellings in question, and the chief issue presented is whether the restriction is still in full force and effect, or whether plaintiff is estopped by acquiescence from challenging the violations.

As to lot 9, in the spring of 1932 construction of a pink stucco dwelling house was begun on the property under supervision of defendant Zeplovitz. It was two stories in height, attractive in appearance, and in every way appeared from the exterior as if designed for use by a single family. As to the interior, the evidence is somewhat conflicting whether it was apparent on casual inspection that the electrical wiring, plumbing, kitchen and bathroom facilities, et cetera, had been designed to enable more than one family to occupy the house. Zeplovitz testified that from the beginning the house was designed for double occupancy and that separate plumbing, kitchens and bathrooms were constructed according to the original plan, nothing being changed after completion. Assuming his rather dubious and very evasive testimony to be true, the first evidence of plaintiff's knowledge of this condition appears to have come after the building was completed. It is true that there was testimony that Mr. Gotto, the president of plaintiff company until his death in 1937, had visited the house while under construction. At that time, however, the second floor had not yet been built and there was nothing that would indicate that duplicate facilities would be installed. By defendants' own statements, Mr. Gotto does not appear to have revisited the house until after its completion.

No circumstance or mitigating factor is disclosed which makes the action of defendants in erecting the dwelling anything more than a bald defiance of the restriction. As we said in *Burns* v. *Terzian,* 233 Mich. 627:

"Having knowingly violated the restrictions without any reason to suppose that the plaintiffs were consenting thereto, they [defendants] cannot now

equitably complain that they were allowed to progress so far with the construction before being enjoined. *McNair* v. *Raymond,* 215 Mich. 632.''

Actually, the evidence is very strong that the house was originally designed for one family. The electrical contractor testified that the building was wired with one meter and that the plumbing was that of a single residence although the pipes were extended to the second floor and then plastered over. A neighbor, Mr. Abrams, stated that his visit to the house soon after completion did not disclose that it was other than a single residence. Gradually, however, additional wiring was installed. The plaster was broken through and plumbing added. From 1933 to 1937 various alterations were made to equip the house for occupancy by more persons. The addition of a door and two windows, which may be said to be the first outward indication of double residence, was not undertaken until 1937, in April of which year the bill of complaint was filed. During most, if not all, of this period, however, the house was being used by two or more families. The inference is irresistible that defendants subtly and rather insidiously proceeded to remodel a single dwelling into a duplex, and stubbornly to persist in their plan after discovery and despite repeated protests and warnings.

Defendants' claim of acquiescence is predicated chiefly upon the admission of Mr. Mathias, who became plaintiff's president in 1937, that both he and Mr. Gotto knew of the violation of the restriction in 1934 or 1935. As the trial court pointed out in his opinion, mere tolerance of unlawful use of a building is not normally a sufficient basis for estoppel. There is positive evidence, moreover, that defendants were warned of their violation and threatened with legal

action as early as 1935. They themselves admit such discussions took place in 1936. The circuit judge found that defendants had not sustained the burden of proving affirmatively that plaintiff or its agents had knowledge of the violation at such a date that failure to begin suit immediately precluded enforcement of the right. With that conclusion we agree. The fact that plaintiff adopted a conciliatory attitude and resorted to the courts only as a last resort was rather to appellants' advantage than to their prejudice. The injunction is here sought to enforce a "strict legal right" derived from the language of the deeds, and "mere delay and acquiescence" will not defeat the right itself where there is nothing to show detrimental change of position by reason of the delay. *Longton* v. *Stedman,* 182 Mich. 405, 415. Where defendants conceal their violation of a restriction, they must not be surprised that their violation is not immediately discovered. And when by their own promises, denials, and excuses they seek to avoid a determination of the problem they themselves have created, they have no cause to complain that too much time has elapsed since the discovery of the violation. Appellants' conduct neither recommends itself to the conscience of the court nor provides any reasonable basis for invoking principles of acquiescence and estoppel. The easily distinguishable cases cited by appellants do not point in a different direction. It should be noted that acquiescence by conduct to the erection or long use of building for nonresidential purposes on property which has been restricted to residential use is not analogous to reasonable delay in objecting to the occupancy of a single dwelling by two or more families in violation of a restriction. The law is not unmindful of such distinguishing factors as the dif-

ficulty and likelihood of discovering the violation, the questionable permanency of the violation, the resulting degree of injury to surrounding property values, and the like.

Building operations on lot 8, which was jointly owned by Gertrude Zeplovitz and Florence Robbins, were begun in the summer of 1934. While the building was in progress, a notice from plaintiff, signed by Mr. Gotto, was delivered to Florence Robbins. The notice indicated that a duplex structure would be a violation of the restriction and subject the lot to forfeiture under provision of the deed. Zeplovitz denied that he had received similar notification. His testimony is characterized by evasiveness rather than a desire to tell the truth. In any event, he was aware of its receipt and a few days later assured a stenographer in the office of Mr. Gotto that the house was to be a single dwelling. A similar statement was made to the electrician who wired the house for multiple occupancy. The record discloses much resourcefulness and originality on appellants' part in masking their true operations and scheme to make the second house similar to the first. Partitions were demolished and erected; doors were cut through them; wires and pipes were changed at will; an extra kitchen was explained away because of the religious dietary scruples of one member of the household; construction of a bedroom was justified by a newly discovered desire of two others for more secluded sleeping space. All of this activity, nevertheless, was directed to one objective only—to avoid obedience to a restriction which was agreed to by defendants when they purchased their lots and which was designed for the mutual protection of all property owners in the subdivision. If defendants had either moral or legal justification for this pro-

cedure, it was not disclosed at the trial. The record leaves no doubt that the trial judge correctly found that there had been no waiver of the right to en, force the restriction on lot 8 any more than on lot 9. See *Longton* v. *Stedman, supra; Burns* v. *Terzian, supra.*

Although appellants' brief contains a suggestion that there was a general waiver of the restriction in the subdivision because of the use by many others of single homes for more than one family, there is little in the evidence to support the claim. Only three violations in addition to the present are established and as to them plaintiff claims steps were being taken to compel observance of the restriction. No general waiver or abandonment is proved.

The remaining assignments of error deal with questions of the admissibility of certain evidence. Appellants attempted to show by witness Lowe, an attorney, the brother of one defendant and son of others, that both the night before and shortly after Gotto served Mrs. Robbins with the notice warning her of the restrictions on lot 8, Lowe talked to Gotto about the restrictions. The testimony was excluded on the ground that Lowe was acting as attorney and agent for appellants and was barred by the statute from testifying as to what Gotto, the deceased agent of plaintiff, had told him.* No offer of proof was made and we do not know to what Lowe would have testified had the objection been overruled. To preserve this question for proper review, particularly in an equity suit, correct practice required that a special record of this offered testimony should have been made. Presumably, just as Mrs. Robbins had attempted to report, Lowe would have testified that

---

* See 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914).—Reporter.

Gotto told him that the notice was merely formal and of no significance, that it could be disregarded and the threatened violation of the restriction would be tolerated by plaintiff.

Lowe had owned property in the subdivision. From time to time he advised his sister and his parents in this matter. Manifestly, he was not oblivious to their interests, either professionally or otherwise. The judge held that he was their agent. This was a fair inference from the testimony. Even if it be assumed that the statute was inapplicable to him, we would not come to a conclusion different from that arrived at by the trial court. Lowe's close relationship to defendants, the utter improbability of a business man serving a notice in writing with one hand and revoking it with the other, and the unlikelihood of an experienced attorney at law, seeking to protect the rights of his own family, contenting himself with oral statements of an intention different from that revealed by a written instrument, are factors too compelling to entitle such testimony to serious consideration. It is undisputed that appellants were warned that they were violating the terms of the restriction. In the light of the entire evidence, if any error was committed, it was not prejudicial nor grounds for reversal.

The decree for plaintiff is affirmed, with costs.

WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.