BOSTON-EDISON PROTECTIVE ASS'N v. ALLEN.

1. COVENANTS—RESIDENCE RESTRICTIONS—BUSINESS USE OF CONVERTED GARAGE.

Sale of plants and flowers from double garage from which doors had been removed, a small ledge built in lieu thereof and a steel casement and glass front installed, in which occupants have telephone service and give delivery service *held*, the conduct of a business in violation of restrictions in deed to owner of lot and of restrictions in deeds to all other lots in

same subdivision limiting use to a single dwelling house per lot to be occupied only for residence purposes.

2. SAME—COMMON GRANTOR.

Lot owners of subdivision who acquired their respective lots either from the original owner, executors of her estate or from their successors in title may be said to have acquired their property from a common grantor with identical restrictions so far as enforcement thereof against an individual lot owner is concerned.

3. SAME—WAIVER—LACHES—ESTOPPEL—EQUITY.

In suits to enforce building restrictions, what constitutes waiver, laches or estoppel depends upon the facts of each case and the concern of the court is in arriving at an equitable result in the light of all the surrounding circumstances.

4. INJUNCTION—ESTOPPEL—ENFORCEMENT OF BUILDING RESTRICTION.

Plaintiff nonprofit corporation, consisting of owners of lots in a subdivision restricted to single residences to be used for dwelling house purposes only, and nearby property owners were not estopped from obtaining injunctive relief against a corner lot owner who had leased his two-car garage for about seven years for use as place in which plants and flowers were sold, where no physical alteration was outwardly apparent until about a year prior to commencement of suit and lot owner had repeatedly stated the use was temporary during illness in his family and poor business conditions and reconstruction of building could be effected at practically no expense.

5. COVENANTS—PREJUDICE—DELAY IN ENFORCING RESTRICTIONS.

Owner of two-car garage which was converted into a flower shop by removal of doors, a small ledge built in lieu thereof and a steel casement and glass front installed would not be prejudiced by delay on part of property owners in bringing suit to enforce residence use restriction where building can be reconverted with practically no expense and owner has received income for a use in violation of the restriction many times the cost of the alteration made; nor can lessees under oral month-to-month lease be said to be prejudiced by such delay as lease could be terminated at any time upon 30 days' notice.

6. INJUNCTION—ENFORCEMENT OF RESTRICTIVE COVENANTS—LOSS OF INCOME.

Loss of income or rentals from future continuance of violation of restriction of use of land on which inexpensive alterations

were made is insufficient to bar injunction against continuance of violation.

7. SAME—ESTOPPEL—VALUE OF PROPERTY—COST OF ALTERATION.
   Injunctive relief was properly granted to owners of lots restricted to use for residence purposes in their suit against· corner lot owner who had converted his two-car garage into a flower shop where plaintiffs were not estopped from having such relief, the property value of their fine residences would be materially affected if the otherwise universally respected restrictions were not strictly enforced, and defendants could restore their property at practically no expense.

8. SAME—DELAY—CHANGE OF POSITION.
   Mere delay and acquiescence in the violation of a building restriction will not defeat the right thereafter to enforce the restriction where there is nothing to show detrimental change of position by reason of the delay.

Appeal from Wayne; Bishop (Clifford A.), J., presiding. Submitted April 30, 1940. (Docket No. 136, Calendar No. 41,023.) Decided June 3, 1940.

Bill by Boston-Edison Protective Association and others against William Y. Allen and others for an injunction to restrain violation of·building restrictions. Decree for plaintiff. Defendants appeal. Affirmed.

*Bishop & Bishop,* for plaintiffs.

*Ben L. Goode (Benjamin Pearlman,* of counsel), for defendants.

CHANDLER, J. This is an injunction proceeding brought by plaintiffs to restrain defendants from violating certain building restrictions in a subdivision known as Voight Park in the city of Detroit. The record shows that this subdivision is a highly restricted district, the restrictions confining the use of the premises involved, and all of the others in the

subdivision, to single dwelling houses to be occupied entirely for dwelling purposes.

Plaintiff, Boston-Edison Protective Association, is a nonprofit sharing corporation, organized by the property owners of said Voight Park subdivision and two other adjoining subdivisions. It was originally incorporated to take in the other two subdivisions, but later, in July, 1938, Voight Park subdivision was taken in on application of a majority of the residents of the district. The purpose of this corporation is to enforce the restrictions in the three subdivisions, thereby relieving the individual property owners of any unpleasantness in connection with such enforcement.

The individual plaintiffs are residents and owners of property in the Voight Park subdivision adjacent to the premises owned by defendants William Y. and Myrtle W. Allen. These defendants are owners as tenants by the entireties of the westerly 39.56 feet of lots 396 and 397 in said subdivision, better known as 959 Longfellow avenue, located on the southeast corner of the intersection of Hamilton avenue and Longfellow avenue in the city of Detroit.

The defendants mentioned have been the owners of the premises in question for about 20 years, whereon is located a substantial dwelling house fronting on Longfellow avenue, occupied by them as their home, and a two-car garage, opening on to Hamilton. They have occupied the property since they acquired the same, and it is undisputed that at the time of the purchase they did not intend to conduct any business thereon and the garage did not appear to be a place of business. It is admitted that at the time of purchase, they knew of the building restrictions. It is further admitted by all parties that the building restrictions covering said subdivision are a matter of record in the office of the register of deeds for the

county of Wayne, and that the restrictions in the deed to defendants, and to all other owners in the subdivision, contained the following provision:

"Provided, however, that said parties of the second part will not and their heirs and assigns shall not use or occupy said lot except for a single private dwelling house and dwelling house purposes only; and they will not and their heirs and assigns shall not erect any dwelling on said lot costing less than $3,000 or situated nearer than 25 feet to the line of Longfellow avenue, or more than — feet from the westerly line of said lot, or less than two stories in height; the projections forming a part of the body of the house to be construed as part of the house and must be set within the building line; but porches and steps not to be construed as a part of the house. The made grade shall not be over 24 inches above the sidewalk grade."

Defendants Sam Roth and Norman Hancock, doing business as Edison Flower Shop, are the lessees of the garage on the Allen premises, being tenants on a month-to-month basis by virtue of an oral lease providing for payment of the sum of $30 per month as rent. Said lessees are now operating a business, consisting of the sale of plants and flowers, from the garage, which business they acquired in March, 1938, from one Hinding, paying $500 therefor, the value of the chattels purchased being estimated at $300 and the location at $200. Mr. Hancock stated that the only improvements or changes made by them were that the garage doors had been completely removed, a small ledge built in lieu thereof, and a steel casement and glass front installed. He further stated that it took them about two weeks to complete the window; and that they have telephone service in and delivery service from said place of business. We think it is a fair

statement to say that there is now being conducted from the garage a place of business contrary to the provisions of the restrictions in the Allen deed, and contrary to restrictions of record as to all other owners in the subdivision.

Defendants Mr. and Mrs. Allen claim that in the early thirties they built a cement floor in the garage, and that that was the only money they had ever invested in any improvements to convert said garage to a place of business. Mr. Allen also conceded that rents have exceeded by many times any expenses connected with improvements or the maintenance of the garage.

The original owner of the property in the Voight Park subdivision was Helen H. Newberry, and the present owners of the various lots acquired title from Helen H. Newberry, Truman H. Newberry and John S. Newberry, as executors of the estate of Helen H. Newberry, deceased, or from their successors in title. So it may be said that all of the present owners of lots in the subdivision acquired title from a common grantor with identical restrictions.

It is undisputed that at the time the Allen garage was built it had absolutely no appearance of being a place of business, and that at no time was there any change made in the physical appearance thereof until sometime in March, 1938, although from about the year 1932 the Allens have leased it for the sale of flowers. It appears that at times some small signs were placed in front of the garage and that the neighbors treated its use for the sale of flowers as a temporary matter.

The sole question presented to the trial court was whether or not plaintiffs have acquiesced in the use of the premises involved as a flower shop for a sufficient number of years so that they have been guilty

of waiver and laches to the extent that they are now estopped from enforcing the restrictions involved as against defendants.

The trial court found that plaintiffs had not been guilty of laches; and that the conduct of the defendants had been such as to lead the other property owners in the plat to believe that the sale of flowers in the garage was only a temporary matter, which would be discontinued whenever there was objection on the part of the other owners in the subdivision. The trial court also found that the matter of the conversion of the garage from its appearance as such into a store for the sale of merchandise was a matter which happened suddenly; that the conversion took place practically over night some time in March, 1938; and that plaintiffs acted with reasonable promptness after the conduct of defendants was such as to lead them to believe that a business place was being established on the premises.

A decree was entered granting plaintiffs the relief sought and defendants have appealed.

It is agreed by both parties that what constitutes waiver, laches or estoppel depends upon the facts of each case, and that the concern of the court is in arriving at an equitable result in the light of all circumstances surrounding the case.

One of the plaintiffs, Wellington Logan, testified that he first knew of the sale of flowers at this garage about the year 1933; that he talked with defendant Allen who said that he permitted flowers to be sold in the garage because his wife was ill, business was not good, and he would be glad to see that the flowers were done away with if there was any objection on the part of the neighbors; that about a year later he had a further conversation with Mr. Allen, when he noticed that a Hamilton street number had been placed on the garage, which he believed might signify

the intention of Mr. Allen to introduce a permanent place of business in the garage, and upon request the number was removed by Mr. Allen.

A witness for plaintiff, Oscar Hull, a home owner in this subdivision near the Allen home, testified that in 1934 he had some discussion with his neighbors about the sale of flowers in Mr. Allen's garage, and as a result went to see Mr. Allen, who said he was having a hard time on account of business conditions; that they only sold a few flowers; that it was just a temporary proposition and wouldn't grow; and that as soon as things got better they would discontinue it. Both Mr. Logan and Mr. Hull testified that they communicated to other neighbors the assurance given them by Mr. Allen; that they felt and believed that Mr. Allen was acting in good faith, and that as soon as times got a little better he would discontinue the sale of flowers in the garage. Defendant Allen's testimony, to some extent, is in conflict with this, but we believe the circumstances and his conduct indicate that such assurance was given by him and that his conduct was such as to lead his neighbors to the belief that the sale of flowers was a temporary matter and would be abated when requested.

The trial court found, and his finding is supported by the record, that all defendant Allen has to do to put the garage building in the shape that it was and comply with the restrictions is to put the doors back and remove the window and that this can be done with practically no expense; that Mr. Allen has not been prejudiced financially by the delay of plaintiffs in bringing this action because he has had the income from the garage since 1932 or 1933.

We fail to see how defendants Roth and Hancock have been prejudiced by any delay in the bringing of this action as they never had any interest in the premises other than a verbal lease from month to

month, which could be terminated at any time upon 30-days' notice.

Appellants cite numerous cases in support of their contention that plaintiffs are estopped by reason of laches from maintaining their bill. Typical of these are *Thill* v. *Danna,* 240 Mich. 595; *Boston-Edison Protective Ass'n* v. *Goodlove,* 248 Mich. 625; and *Bigham* v. *Winnick,* 288 Mich. 620. In all of these cases it appears that the plaintiffs made no objection during a long period of time and that during such time buildings were erected or improvements made by the defendants at costs running into many thousands of dollars. They are, therefore, clearly distinguishable. There is nothing in the record in the instant case that would indicate any financial loss to any of the defendants other than the loss of income or rentals in the future through violation of the restrictions in question.

It is undisputed that the Voight Park subdivision consists exclusively of fine residences which universally comply with the restrictions of record; and that it is a subdivision of home owners, several of whom testified that if the restrictions were not enforced, it would materially affect the value of the homes therein. We believe that it would be most inequitable to them to allow their property to be so damaged.

We held in *Michiana Shores Estates, Inc.,* v. *Robbins,* 290 Mich. 384, 390, that the injunction sought was to enforce a strict legal right derived from the language of the deeds and that "mere delay and acquiescence will not defeat the right itself where there is nothing to show any detrimental change of position by reason of such delay."

In the instant case, plaintiffs seek the enforcement of a strict legal right derived from the language of the deeds to defendants and themselves. It does not

appear from the record that there was such lack of diligence on their part as to bar them from the enforcement of their rights.

The decree is affirmed, with costs to plaintiffs.

BUSHNELL, C. J., and SHARPE, POTTER, NORTH, MC-ALLISTER, and WIEST, JJ., concurred. BUTZEL, J., did not sit.