

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00080-CV

_____

193 DORIS TRUST, ANDREW HUDSON, AND ERIN HUDSON, Appellants

V.

AARON HANSEN, JUANITA HANSEN, WILLIAM B. PATTERSON, IV,
BEN PURCELL, CANDACE POOLE, JOHN CARSON, LIZ CARSON, TERRY HAINLEN,
THOMAS L. TERRELL, AND PAMELA A. TERRELL, Appellees

On Appeal from the County Court at Law
Kerr County, Texas
Trial Court No. 20684C

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

This is an appeal from the trial court's final judgment, which reinstated a prior summary judgment and denied all remaining relief requested. On appeal, the 193 Doris Trust and its trustees, Andrew Hudson and Erin Hudson, argue that the trial court erred by reinstating the prior summary judgment.[1] They also argue that the trial court's summary judgment order is void for vagueness and is overbroad.

We find that the trial court's reinstatement of the prior summary judgment order was proper. We also find that the order is not void for vagueness or ambiguity. Even so, we find that a portion of the order is overbroad, reverse that portion of the order, and remand the matter to the trial court for redrafting. We affirm the remainder of the trial court's judgment.

## I.    Factual and Procedural History

In 2017, the 193 Doris Trust and its trustees, Andrew Hudson and Erin Hudson (collectively Appellants), purchased a five-acre property located at 193 Doris Drive in Kerr County, Texas (the Property). According to neighboring property owners, Aaron Hansen, Juanita Hansen, William B. Patterson, IV,[2] Ben Purcell, Candace Poole, John Carson, Liz Carson, Terry Hainlen, Thomas L. Terrell, and Pamela A. Terrell (collectively Residents), the Property was subject to a covenant requiring the Property to be "used solely for residential

---

[1]Originally appealed to the Fourth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Fourth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

[2]Patterson's middle initial is "B." in the vast majority of the pleadings in this case. While the initial appears to have inadvertently been changed to "V." on some pleadings, including the judgment on appeal, we use the initial "B."

2

purposes." The covenant also specified that "all structures used or designed for use as a dwelling" had to be at least 1,000 square feet and "permanently attached to the land."

After purchasing the Property, the Appellants advertised that the public could rent it for wedding parties. In September 2020, the Appellants also placed a shipping container on the Property that was converted into a living space but was less than 350 square feet. In October, the Residents sent a written notice to the Appellants informing them that their "short-term rentals and special events" and the use of the shipping containers violated restrictive covenants and had produced "excessive late-night noise." In December, the Appellants moved two more shipping container living spaces "less than 200 square feet" onto the Property.

The Residents, whose properties were all subject to the same restrictive covenants, sued the Appellants to enforce the covenants and to obtain injunctions requiring the removal of the shipping containers and "prohibiting future non-residential rentals and the addition of further non-conforming residences." In their December 2020 response, the Appellants raised defenses of waiver and abandonment.

The Residents filed a traditional motion for summary judgment on their claims. In support, they attached (1) the Property's deed, (2) the restrictive covenants, (3) invoices for the shipping containers showing their sizes, (4) listings from VRBO, AirBnB, and Expedia showing the Property available for rent, and (5) the affidavit of resident Aaron Hansen.[3] Hansen's

---

[3]The specific language of the restrictive covenant stated that the "[P]roperty shall be restricted in the following fashion":

3

affidavit stated that he "personally observed the use of the [P]roperty by various groups for short terms beginning in 2017" and that "guests staying at the Property were regularly loud and disruptive," which led to disturbances that were responded to by the Kerr County Sheriff's Department "on multiple occasions." Hansen's affidavit also said that (1) "a 40-foot shipping container . . . was delivered and placed on the [P]roperty" on September 27, 2020, (2) "an additional 20-foot shipping container . . . was delivered to the [P]roperty" on December 6; and (3) "a third shipping container . . . was delivered . . . to [the P]roperty" on December 22. The Residents also attached the Appellants' responses to requests for admissions. Those responses showed that Appellants admitted that the shipping containers were "used or intended for use as short term rentals" but were "less than one thousand square feet." The Appellants also admitted that Erin Hudson said that "she had five containers coming to the [P]roperty."

The Appellants admitted in their summary judgment response that the Property was subject to the restrictive covenants but was advertised for short-term rental. They also admitted that a forty-foot shipping container and two twenty-foot containers were placed on the property. Even so, the Appellants argued that the shipping containers were not "'dwellings' or 'designed as dwellings' as contemplated by the restrictive covenants," because they were "not designed as permanent living structures or single-family dwellings," but were instead to be used as short-term rentals "appurtenant to the rights of Defendants' to use and enjoy their property." As a

---

1. The same shall be used solely for residential purposes.
2. All structures used or designed for use as a dwelling shall be permanently attached to the land, and shall contain not less than One Thousand (1,000) square feet of floor space, exclusive of garage and porches.
3. Every such dwelling shall be equipped with sanitary indoor plumbing, and provided with underground sewage disposal.

4

result, the Appellants argued that the unambiguous language of the covenants did not restrict them from renting out the Property.

After a hearing, the trial court, on September 2, 2021, rejected the Appellants' arguments and granted the Residents' motion for summary judgment (Summary Judgment Order). Accordingly, the trial court ordered the shipping containers removed from the Property, prohibited the Appellants from using or advertising the Property for special events or other non-residential uses," and awarded attorney fees to the Residents.

On October 1, 2021, the Appellants filed a motion for new trial and motion for clarification and reformation because the terms "dwelling," "special events," "advertising," "residential uses," and "non-residential uses" were too vague to be enforced and were broad enough to encompass private gatherings hosted by the Appellants, which they had the right to enjoy as property owners. After a hearing, the trial court partially granted the motion for new trial "but only to the extent necessary to determine the applicability of *waiver* or *abandonment* as to the Restrictive Covenants." Specifically, the order vacated the Summary Judgment Order and stated,

> The Court will allow the reopening of discovery for the Defendants to conduct discovery and investigate the structures and their uses throughout the properties burdened by the Restrictive Covenants, to ascertain if and to what extent other properties burdened by the Restrictive Covenants have structures thereon that are 1,000 square feet or less which are being "used or designed for use as a dwelling" or not used "solely for residential purposes" such that those particular restrictions would no longer be enforceable against the Defendants' structures and use of the property.

In sum, it appeared that the motion for new trial was granted to allow the Appellants to conduct discovery on their affirmative defense. By January 2022, Aaron Hansen, Juanita

5

Hansen, William B. Patterson, IV, Ben Purcell, Candace Poole, Liz Carson, Thomas L. Terrell, and Pamela A. Terrell nonsuited their claims against the Appellants, leaving John Carson and Terry Hainlen (Appellees) as plaintiffs.

Because over a year had passed without activity, the trial court set the case on the dismissal docket and noticed a hearing for May 19, 2023. At the hearing, the Appellants' counsel apologized that, since he had taken over the case in October 2021, he "had four deaths in the family" and had "just gotten way behind." After the trial court learned that counsel had asked to inspect several properties on the day of the hearing, it decided to "retain [the] case for 30 days." After that time had passed, on June 15, 2023, Appellees' counsel informed the trial court that "[s]ince the hearing, there [had] been no follow up and no discovery conducted or requested." Counsel further stated in its letter,

> If the case is simply dismissed for want of prosecution, I believe there could be some confusion about the final status of the case. In order to clarify the record, I am submitting a draft Order that Vacates the Order Granting a New Trial (in part), and confirms the Order Granting Summary Judgment, for your consideration.

The next day, Appellees' counsel responded that he could not do anything to schedule property inspections of properties belonging to the Residents and that it was his expectation that Appellees' "counsel would contact his clients (and their neighbors) to arrange for potential dates during which the properties could be inspected."

On June 16, the trial court entered an order reinstating the Summary Judgment Order (Reinstatement Order). The Reinstatement Order stated,

> Having found that Defendants have not timely, or diligently, pursued the limited issue of alleged waiver of, or abandonment of, the Restrictive Covenants,

6

the Court hereby vacates the Order of the Court Granting Defendants' Motion for New Trial (in part) and Order Granting Defendants' Motion for Clarification and Reformation of Order Granting Plaintiffs' Traditional Motion for Summary Judgment.

## II.     Reinstatement of the Summary Judgment Order Was Proper

In their first point error, the Appellants argue that the trial court erred by entering the Reinstatement Order for three reasons. They complain of the procedure used by the trial court to reinstate the Summary Judgment Order, contend that the lack of a hearing violated their due-process rights, and believe that the Reinstatement Order constituted death-penalty sanctions. Our review of the procedural history shows that the trial court employed the proper procedural mechanisms, that Appellants were afforded their day in court, and that no death-penalty sanctions were imposed.

The procedural mechanism employed by the trial court to reinstate the Summary Judgment Order is explained in *In re Baylor Medical Center at Garland*, 280 S.W.3d 227 (Tex. 2008) (orig. proceeding). There, the Texas Supreme Court reiterated, "A trial court's plenary jurisdiction gives it not only the authority but the responsibility to review any pre-trial order upon proper motion." *Id.* at 231 (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)). As a result, the trial court can reconsider a ruling granting a new trial at any time while the case is pending. *Id.* at 230–31, 232; *see Guerrero v. Cardenas*, No. 01-20-00045-CV, 2022 WL 210152, at *6 (Tex. App.—Houston [1st Dist.] Jan. 25, 2022, pet. denied) (mem. op.). Should it choose to do so, the trial court is free to enter an "order granting reinstatement" of a prior judgment. *In re Baylor Med. Ctr. at Garland*, 280 S.W.3d at 231; *see Guerrero*, 2022 WL 210152, at *6 ("[T]he trial court had the authority to reconsider and vacate

7

the new trial order and to reinstate the final judgment at any time before judgment was entered."). Because the trial court employed the procedural mechanism blessed by the Texas Supreme Court, we overrule the Appellants' complaint about it.

As for Appellants' due-process complaint, while the trial court has the "power to control its docket," "[b]efore a trial court may dismiss pursuant to either Rule 165a or its inherent authority, the party subject to dismissal must be provided with notice and an opportunity to be heard." *Saldana v. Hinojosa*, 517 S.W.3d 239, 241 (Tex. App.—San Antonio 2017, no pet.). The record shows that, on November 5, 2021, the trial court initially set aside its Summary Judgment Order to allow the Appellants to conduct limited discovery on their affirmative defenses of waiver or abandonment. After a considerable amount of time passed without activity on its docket, the trial court sent notice of a May 19, 2023, dismissal hearing. The Appellants appeared at the hearing and argued that they needed more time for discovery. The trial court ruled, "I'm going to retain your case for 30 days. Okay? So everything needs to be done in 30 days." Because the discovery was not completed within the thirty days, the trial court found that the Appellants had "not timely, or diligently, pursued" their affirmative defenses. As a result, the trial court denied the relief sought by the Appellants, vacated prior orders granting their motions for new trial and for clarification and reformation, and reinstated the Summary Judgment Order.

We find that the Appellants had the opportunity to be heard during the May 19 hearing and were given a deadline of thirty days to show diligent prosecution of their affirmative defense but failed to do so. Although they now complain that they should have been afforded another

8

hearing, they have provided no authority holding that another hearing was required before dismissing their affirmative defenses and entering the Reinstatement Order.[4] Further, although they would have been automatically entitled to a hearing had they filed a motion to reinstate the case under Rule 165a, they failed to do so. *See* TEX. R. CIV. P. 165a(3); *Thordson v. City of Houston*, 815 S.W.2d 550, 550 (Tex. 1991) (per curiam). As a result, we find no due-process violation.

As for their complaint that the trial court imposed death-penalty sanctions, we find the complaint meritless. Nothing indicates that the trial court sanctioned the Appellants; it dismissed their defenses for want of prosecution. *See Hernandez v. ISE, Inc.*, No. 04-06-00888-CV, 2008 WL 80005, at \*4 (Tex. App.—San Antonio Jan. 9, 2008, no pet.) (mem. op.) (explaining that a dismissal for want of prosecution is not a sanction); *see also Patton v. Russell*, No. 04-99-00221-CV, 2000 WL 330315, at \*2 (Tex. App.—San Antonio Mar. 29, 2000, pet. denied) (not designated for publication) (citing *MacGregor v. Rich*, 941 S.W.2d 74, 75 (Tex. 1997) (per curiam)) (finding that the trial court's dismissal for want of prosecution was not a sanction).

We have overruled the challenges raised by the Appellants to the Reinstatement Order. As a result, we overrule their first point of error.[5]

---

[4]Appellants argue that the trial court was required to enter a new judgment. Here, the new judgment was the Reinstatement Order.

[5]In their reply brief, Appellants raise additional arguments not presented in their opening brief. Appellees were not able to respond to these new arguments, and as a result, we will not consider them. *See Diamond Env't Mgmt., L.P. v. City of San Antonio*, No. 04-21-00058-CV, 2022 WL 4359085, at \*5 (Tex. App.—San Antonio Sept. 21, 2022, pet. denied) (mem. op.).

**III.     The Trial Court's Judgment Is Not Void**

In their second point, the Appellants argue that the Summary Judgment Order was void because it was "overbroad, ambiguous and/or vague."[6]   "[W]e enforce unambiguous orders literally." *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011) (per curiam) (citing *Reiss v. Reiss*, 118 S.W.3d 439, 441–42 (Tex. 2003)).  But "even a 'literal' interpretation of an unambiguous order requires us to look at the order as a whole." *Id.* (citing *Reiss*, 118 S.W.3d at 441).  "If possible, we construe an order in a way that gives each provision meaning." *Id.* (citing *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000)).

The complained-of portion of the Summary Judgment Order reads:

It is further

**ORDERED, ADJUDGED,** and **DECREED** that Defendants must remove the shipping containers installed on the property located at 193 Doris Drive, Kerrville, Texas, 78028 within 15 days of this order because the containers violate the restrictive covenants.  It is further

**ORDERED, ADJUDGED,** and **DECREED** that Defendants are prohibited from installing on the property located at 193 Doris Drive, Kerrville, Texas, 78028 any shipping containers, or other dwellings under 1,000 square feet, because these structures violate the restrictive covenants.  It is further

**ORDERED, ADJUDGED,** and **DECREED** that Defendants are prohibited from using or advertising the property located at 193 Doris Drive, Kerrville, Texas, 78028 for special events or other non-residential uses. . . .

In particular, the Appellants argue that the terms "dwelling," "residential use," "non-residential" rentals, "non-residential use," "advertising," and "special events" were never defined.  As a result, they claim, "the Order is too vague and ambiguous to be enforceable."

---

[6]The Appellants do not argue in their opening brief that the trial court erred by granting the summary judgment.

It is true that "for a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him." *In re J.J.R.S.*, 627 S.W.3d 211, 223 (Tex. 2021) (quoting *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex. 1967) (orig. proceeding)). Even so, "while an order must be 'clear, specific, and unambiguous' to be enforceable by contempt, it does not follow that every order less than that is invalid." *Id.* (quoting *Ex parte Slavin*, 412 S.W.2d at 44). That is because "where an order's terms are ambiguous—that is, susceptible of more than one reasonable interpretation— . . . we look to the surrounding circumstances to discern their meaning." *Kourosh Hemyari*, 355 S.W.3d at 626 (citing *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971) (orig. proceeding)). Here, even though the Summary Judgment Order does not define six terms, "the ordinary meaning of the unambiguous language used in the decree controls." *Ex parte Acker*, 949 S.W.2d 314, 318 (Tex. 1997) (orig. proceeding) (Owen, J., concurring in part, dissenting in part).

The first paragraph of the complained-of portion of the Summary Judgment Order requires that the Appellants "must remove the shipping containers installed on [the Property] within 15 days." We find nothing vague or ambiguous about this portion of the Summary Judgment Order.

Turning to the second paragraph, the Appellants suggest that "dwellings" "encompass[es] any structure on an encumbered property that is permanently attached to the land." Yet, the use of the term "dwelling" in the Summary Judgment Order is not so broad. To "dwell" means "to

11

remain for a time." *Dwell*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). The ordinary meaning of the term "dwelling" is "a shelter (such as a house) in which people live" or "a building or place of shelter to live in." *Turner v. State*, 650 S.W.3d 803, 808 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (quoting *Dwelling*, https://www.merriam-webster.com/dictionary/dwelling; https://www.dictionary.com/browse/dwelling (last visited Mar. 28, 2022)).

Because the Summary Judgment Order used the phrase "shipping containers, *or other dwellings* under 1,000 square feet," the language categorized the Appellants' shipping containers as dwellings, or shelters where people could live or dwell, under 1,000 square feet. (Emphasis added). This was consistent with restrictive covenant language requiring that "[a]ll structures used or designed for use as a dwelling" be at least 1,000 square feet. The Appellants argue that the language of the first paragraph might prevent "outbuildings, storage sheds and barns . . . so long as they are permanently attached to the land," but such a reading is incongruent with the Summary Judgment Order's language prohibiting only dwellings under 1,000 square feet, including the shipping containers, which the Appellants admitted were used as short-term rentals.[7]

As for the third paragraph of the complained-of portion of the Summary Judgment Order, the Appellants argue that the paragraph is void for vagueness and is overbroad. As explained

---

[7]Next, referring to the third complained-of paragraph, the Appellants argue that, because the terms "residence," "'residential use' and 'non-residential use' are not defined," "it would appear that if the property has a dwelling that is used in some manner as a sheltering feature by humans from the elements, then that would qualify as a residential purpose under the Restrictive Covenants." Yet, the plain and ordinary definitions of the terms used in the Summary Judgment Order demonstrate otherwise because something more is required other than "a sheltering feature" to qualify a building as having a residential purpose.

12

below, while we do not find that the paragraph renders the judgment void, we find the language overbroad.[8]

The third paragraph states that the Appellants are "prohibited from using or advertising the property . . . for special events or other non-residential uses." The term "residence" is "the place where one actually lives or has his home as distinguished from his technical domicile," and "residential" means "used, serving, or designed as a residence or for occupation by *residents.*" *Mavex Shops of Corinth, L.P. v. City of Corinth*, No. 2-02-274-CV, 2003 WL 21357597, at \*2 (Tex. App.—Fort Worth June 12, 2003, no pet.) (mem. op.) (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 1931 (1981)). As a result, because the term "nonresidential" means "not used as a residence or by residents," *Nonresidential*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003), the third paragraph prohibits only non-resident use of the property while allowing residential use of the property by the Appellants.[9]

We find that the Summary Judgment Order states "in clear and unambiguous terms what is required for the [Appellants] to comply." *In re J.J.R.S.*, 627 S.W.3d at 224 (quoting *Hale v. Hale*, No. 04-05-00314-CV, 2006 WL 166518, at \*3 (Tex. App.—San Antonio Jan. 25, 2006, pet. denied) (mem. op.)). As a result, we conclude that the Summary Judgment Order is not void.

---

[8]"While an injunction order may not be too vague, it need not specifically identify every act that might constitute the prohibited action." *GL Logistics Co., LLC v. Flores*, No. 04-21-00125-CV, 2021 WL 3862232, at \*5 (Tex. App.—San Antonio Aug. 31, 2021, no pet.) (mem. op.).

[9]It is not clear whether the Appellants are claiming not to understand the terms "advertising" or "event." In any case, advertising means "the action of calling something to the attention of the public especially by paid announcements." *Advertising*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). An "event" is "a social occasion or activity." *Event*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003).

13

**IV.    The Third Paragraph Is Overbroad**

Even so, we find that the plain meaning of the third paragraph renders the paragraph overbroad.  *See Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 288 (Tex. 2018).

"[A]n injunction must not be so broad as to enjoin a defendant from activities that are a lawful and proper exercise of his rights."  *GL Logistics Co., LLC*, 2021 WL 3862232, at *6 (alteration in original) (quoting *Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 221 (Tex. App.—Dallas 2005, no pet.)).

In response to the Appellants' argument that the third paragraph is overbroad, Appellees argue that the third paragraph prohibits only rentals of the shipping containers, which violate the 1,000-square-foot requirement under the restrictive covenant.  However, that is not what the third paragraph says.  Instead, it prohibits using or advertising the Property, including the main residence, for special events or nonresidential purposes.  As a result, the Appellants argue that this language is "too broad and . . . can be interpreted as precluding Appellants' property rights." We agree.  *See JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n, Inc.*, 644 S.W.3d 179, 185 (Tex. 2022); *Tarr*, 556 S.W.3d at 291–92; *see also Stephenson v. Perlitz*, 532 S.W.2d 954, 955–56 (Tex. 1976).

We hold that the third paragraph of the complained-of portion of the Summary Judgment Order is overly broad.  As a result, we must reverse that portion of the Summary Judgment Order.

## V.    Conclusion

We reverse the trial court's Summary Judgment Order in part, dissolve the language prohibiting the Appellants from using or advertising the Property for special events or other non-residential uses, and remand the case for the trial court to reconsider that paragraph and to redraft it in accordance with *Tarr* and *JBrice Holdings.  See Pauli v. Hayes*, No. 04-17-00026-CV, 2018 WL 3440767, at \*14 (Tex. App.—San Antonio July 18, 2018, no pet.) (mem. op.) (remanding the case for the trial court to reconsider and redraft language providing for injunctive relief).  In all other respects, we affirm the Reinstatement Order.

Scott E. Stevens
Chief Justice

Date Submitted:    February 21, 2024
Date Decided:    March 25, 2024

15