**Mr. and Mrs. William STEPHENSON et al., Petitioners,**

v.

**Mr. and Mrs. Werner J. PERLITZ, Respondents.**

No. B–5484.

Supreme Court of Texas.

Feb. 4, 1976.

Brown, Maroney, Rose, Baker & Barber, Charlie D. Dye and Scott R. Kidd, Austin, for petitioner.

Watkins, Ledbetter, Hayden & Ramsey, Thomas H. Watkins, Austin, for respondent.

SAM D. JOHNSON, Justice.

Petitioners Mr. & Mrs. William Stephenson, et al., as lot owners in the Edgemont subdivision in the City of Austin, instituted this suit seeking a permanent injunction against respondents Mr. & Mrs. Werner J. Perlitz to prevent them from constructing a duplex which, according to their contention, violated a one-residence restrictive covenant which was common to all of the parties' deeds. The trial court granted a temporary restraining order and, after notice and hearing, a temporary injunction. Following a trial on the merits the trial court denied the permanent injunction. The court of civil appeals affirmed with one justice dissenting. 524 S.W.2d 786. We reverse.

Petitioners, Mr. & Mrs. William Stephenson and Mr. & Mrs. Sanford Newman, are home owners in the Edgemont subdivision in the City of Austin which contains one hundred three lots. The Newmans have resided on their property since 1960 and the Stephensons have resided on their property since 1970. Respondents, Mr. & Mrs. Perlitz, purchased a vacant lot in the Edgemont subdivision in 1973 with knowledge of the restrictive covenant. The pertinent restrictive covenant which is common to each of Edgemont subdivision deeds is as follows:

"All improvements to be erected upon the premises hereby conveyed shall be built and used *for residence purposes,* excepting such improvements as may be proper for use in connection with residences.

"*Only one residence* shall be erected upon the premises hereby conveyed and if two stories or more, shall be of the original cost of not less than $6,000.00 and if less than two stories shall be of the original cost of not less than $2,500.00." [Emphasis added.]

Shortly after Mr. & Mrs. Perlitz purchased their lot they began the construction of a duplex thereon. Upon learning that a duplex was to be built on the lot, the petitioners promptly filed the instant suit. At the time of institution of this suit only the initial work on the foundation had been completed, but the slab had not been poured. The trial court prohibited further construction by granting a temporary restraining order which was continued as a temporary injunction. The applicatio.. for a permanent injunction was tried to the court which, upon hearing, dissolved the temporary injunction and denied the permanent injunction.

The court of civil appeals affirmed with one justice dissenting. The majority opinion of the court of civil appeals did not find it necessary to consider what it characterized as "subsidiary points," dealing with waiver of the right to enforce the restriction and change of conditions. The court relied on *MacDonald v. Painter,* 441 S.W.2d 179 (Tex.1969), in holding as a matter of law that the deed restriction in issue does not prohibit the construction of a duplex. The majority opinion states (524 S.W.2d 786 at 789), "[t]he opinion in *MacDonald v. Painter, supra,* controlled the action of the trial court; and, the same opinion dictates an affirmation of the judgment denying the permanent injunction."

In *MacDonald v. Painter, supra,* the restriction provided:

" . . . it being understood that all improvements to be erected on said premises shall be built and used *for residence purposes only,* excepting such improvements as may be proper for use in connection with a residence." [Emphasis added.] 441 S.W.2d 179 at 180.

We think it apparent that the *MacDonald* restriction is distinguishable from the restriction in issue in the instant case. In *MacDonald* the restriction used the word "residence" as an adjective and the phrase "for residence purposes only" referred to the type of *use* or mode of occupancy permitted on the property. This was made clear when this court wrote (page 182):

" 'Restrictions which, *without more,* merely limit the use of the property to "residence" purposes have generally been held not to have the effect of forbidding the erection or maintenance of multiple dwellings, the courts taking the view that such terms were directed only at the type of use to be made of the property, and not at the number of families which might make such use.' Annotation, 14 A.L.R.2d 1381.

"The terms, 'residence purposes,' and 'residences' require the use of property for living purposes as distinguished from uses for business or commercial purposes. . . . According to most authorities, the terms, *without other limiting words,* do not prohibit duplex living units." [Emphasis added.]

The *MacDonald* court selectively chose its language, including the italicized words "without more" and "without other limiting words" even as if anticipating the restrictive covenant with which we are presently confronted. In the instant case the restriction contains other limiting words. While the first paragraph contains "residence purposes" language, the second paragraph adds that "[o]nly one residence shall be erected upon the premises hereby conveyed . .." It is in the wording of the second paragraph of the restriction that we find the critical difference between the instant case and *MacDonald v. Painter, supra.* A restriction that property is for residence purposes is quite different from a restriction which additionally provides that only one residence may be erected on the property.

The ordinary and commonly accepted meaning of the phrase "only one residence" per lot is that there shall be no more than one single-family dwelling place on each lot. We believe that this meaning comports with the understanding and intention of the parties. We note, however, that courts in some states have reached a contrary conclusion. *Bear v. Bernstein,* 251 Ala. 230, 36 So.2d 483, 14 A.L.R.2d 1372 (1948); *Hamm v. Wilson,* 169 Ga. 570, 151 S.E. 11 (1929); *Bruno v. Hanna,* 63 N.J.Super. 282, 164 A.2d 647 (1960); *Houk v. Ross,* 34 Ohio St.2d 77, 296 N.E.2d 266 (1973). These decisions have rested on the premise that the term "one residence" is ambiguous and may be broad enough to encompass duplexes and apartments. In view of the ambiguity found in the term "one residence," the courts applied the rule of construction that adopts the meaning which least restricts the free use of the land. In *Houk v. Ross, supra,* the Supreme Court of Ohio held:

"In view of this long-standing rule of construction, this court is bound to interpret the restriction in question in that manner which least restricts the free use of the land. . . . [W]e hold, therefore, that the clause, 'that not more than one residence shall be built upon any of said tracts,' only prohibits the construction of more than one residence building on any of said tracts of land, and does not prohibit the construction of a multiple-family dwelling. If it had been the intent of the sellers to limit construction to single-family residences or dwellings, that restriction should have been specifically stated." 296 N.E.2d 266 at 275.

We decline to follow the decisions holding that the term "one residence" is ambiguous. The Texas courts long ago eliminated any uncertainty about the meaning of the term "one residence" in the case of *Green v. Gerner,* 283 S.W. 615 (Tex.Civ.App.—Galveston 1926), *aff'd,* 289 S.W. 999 (Tex.Com. App.1927). *Green v. Gerner,* relied upon by the dissenting opinion in the court of civil appeals, construed a restriction which provided:

"The property herein conveyed is sold *for residence purposes only,* and *no building other than one residence* with the necessary and appurtenant out buildings and improvements shall occupy the lots herein sold, and said improvements shall cost not less than $6,000." [Emphasis added.] 283 S.W. 615 at 616.

In *Green* the defendants, who sought to construct an eight-unit apartment house, contended that the restriction was no obstacle "because the appellants' apartment building is for residential purposes only, and is but one building." The court rejected this contention, stating (283 S.W. 615 at 617):

"We do not think that an apartment building containing several apartments designed and constructed for use as separate and distinct places of residence for separate families can be regarded as a 'one residence' building, as that term is used in the covenant contained in appellant's deed, without doing violence to the cardinal rule of construction that the words used in an instrument should be given their ordinary and commonly accepted meaning in arriving at the under-

standing and intention of the parties in executing the instrument."

It is to be noted that *MacDonald v. Painter, supra,* did not overrule *Green v. Gerner, supra,* the latter being specifically cited as not being analogous (441 S.W.2d 179 at 183–84). This court then stated that "[w]e conclude that the cases upon which the respondents rely [one of which was *Green v. Gerner*] clearly prohibit units other than single family dwellings, whereas, the Mira Loma restrictions [in *MacDonald*] lack that clarity." 441 S.W.2d 179 at 184.

It is also to be noted that *MacDonald v. Painter, supra,* cited *Bear v. Bernstein, supra,* but it was merely cited for the proposition that a residential use restriction without other limiting words does not prohibit duplex living units. *MacDonald* did not adopt the holding in *Bear.* The other out-of-state cases cited in *MacDonald,* first, are not analogous and, secondly, were cited for the same proposition as *Bear.* *Weber v. Graner,* 137 Cal.App.2d 771, 291 P.2d 173 (1956), was a "residence purpose" restriction; *Baker v. Smith,* 242 Iowa 606, 47 N.W.2d 810 (1951), was a restriction "for residence purposes exclusively"; and *Sporn v. Overholt,* 175 Kan. 197, 262 P.2d 828 (1953), was a restriction where the lots were "designated as residence lots."

We are not alone in our conclusion that the ordinary and commonly accepted meaning of the term "one residence" does not encompass a duplex or apartment building. Courts in several other states have reached the same conclusion. *Ainsworth v. Elder,* 40 Ariz. 71, 9 P.2d 1007 (1932); *Flowers v. August,* 426 S.W.2d 480 (Ky.1968); *Michiana Shores Estates v. Robbins,* 290 Mich. 384, 287 N.W. 547 (1939); *Gerstell v. Knight,* 345 Pa. 83, 26 A.2d 329 (1942); *Bailey v. Jackson-Campbell Co.,* 191 N.C. 215, 131 S.E. 567 (1926); *Easterly v. Hall,* 256 S.C. 336, 182 S.E.2d 671 (1971).

In *Flowers v. August, supra,* the Court of Appeals of Kentucky dealt with a deed restriction quite similar to the one applicable to the Perlitz property. One paragraph of the restriction provided that the property "shall be used exclusively for residential purposes," and a subsequent paragraph provided that "only one residence shall be erected on each unit." An injunction was obtained to prevent the construction of duplex apartments on certain lots covered by the deed restriction. The Kentucky court upheld the injunction, stating:

"It seems clear that the rule announced in *Macy v. Wormald,* Ky., 329 S.W.2d 212, would preclude construction of duplex apartments in face of Restriction 8 [the "only one residence" restriction], unless that restriction has been deleted by agreement of all the lot owners in the subdivision. In *Macy* a restriction provided: 'Said lots shall be used only for residence purposes, and only one residence shall be erected upon each lot * * *.' There we held that 'only one residence' means exactly what it says and cannot be enlarged to mean four residences. *McMahan v. Hunsinger,* Ky., 375 S.W.2d 820, recognized *that a restriction to 'residence' purposes, standing alone, does not prohibit multiple dwellings but that a different rule obtains when the modifying term 'a,' 'one,' or 'a single' is prefixed to the word 'residence.'*" [Emphasis added.] 426 S.W.2d 480 at 481.

As previously indicated, petitioners had other points of error before the court of civil appeals which were not considered in view of the majority's holding as a matter of law that the instant deed restriction did not prohibit the construction of a duplex. It is therefore necessary that we reverse the judgment of the court of civil appeals and remand this cause to it in order that it may pass on the points of error raised by the appellants in that court. The judgment of the court of civil appeals is reversed and this cause remanded to that court for its action consistent with this opinion.