**TRAVIS HEIGHTS IMPROVEMENT ASSOCIATION, et al., Appellants,**

v.

**J.A. SMALL, Appellee.**

No. 13862.

Court of Appeals of Texas, Austin.

Nov. 16, 1983.

**408**

Thomas L. Butler and Craig Smith, Austin, for appellants.

Michael G. Mullen, Brown, Maroney, Rose, Baker & Barber, Austin, for appellee.

Before PHILLIPS, C.J., and EARL W. SMITH and GAMMAGE, JJ.

PHILLIPS, Chief Justice.

Travis Heights Improvement Association, and several Travis Heights Subdivision homeowners, appeal the judgment of the trial court, which, following a non-jury trial, denied appellants injunctive and declaratory relief as regards enforcement of a restrictive covenant.

We affirm.

The record reflects that in 1913 Travis Heights Subdivision was created; this subdivision is a part of the City of Austin. Among the restrictive covenants set-out in the recorded plat of the subdivision is the following:

> 4. All lots sold by the Company shall be subject to the following conditions and restrictions, binding upon the Company's grantee or any successor in title, which may be enforced by injunction or other legal process enforcing and compelling observance of these restrictions and conditions:
>
> * * * * * *
>
> f. Said property shall be used only for residence purposes....
>
> * * * * * *

In 1931 the subdivision was zoned in the "A" residence use classification and the "First" height and area district by the city. In 1958, Mr. and Mrs. O.O. Norwood, who at that time were the owners of the Travis Heights tract, which is the subject of the present action, requested and obtained a zoning change. The Norwood tract was rezoned "O" office use classification and "Second" height and area district. When the Norwoods made known their plans to build a motel on the tract, the appellant association sought an injunction to enforce the quoted restriction. In *Norwood v. Davis*, 345 S.W.2d 944 (Tex.Civ.App.1961, writ ref'd n.r.e.) we held that the restriction was binding on the Norwood tract. The zoning was not affected by that judgment. At the time that the present action commenced, the Norwood tract was still zoned "O."

In 1963, appellee Small purchased the Norwood tract with full knowledge of the restrictive covenants. In 1982, appellee filed with the city an application for a change of the zoning classification of the Norwood tract to "B" residence use classification and "Third" height and area district. This application was not acted upon. When appellee made known his plan to erect a ten-story condominium, containing 220 units, appellants filed suit against appellee and the City of Austin, and requested the following relief, as taken from their petition:

> 1) [that] the Court construe the restrictions for residence purposes contained in ... the plat ...
>
> 2) [that] the zoning ordinance currently allowing the zoning for the [Norwood tract] or for any part of it to be "O" office fifth height and area district be declared invalid and unenforceable and null and void;
>
> 3) [that] the zoning be rolled back to the original zoning of "A" residential use and first height and area district and the Court order any enlarging of such zoning to a lesser use be held null and void;
>
> 4) [that] Defendants and all subsequent owners of the [Norwood tract] and of all property in the Travis Heights Addition which is subject to the deed restrictions ... and their agents and assigns be en-

joined from making any use of their property in the Travis Heights Addition other than that of single family residences or duplexes for residential purposes.

5) [that] Plaintiffs be awarded attorney's fees and costs of Court and such other and further relief to which Plaintiffs may be justly entitled, either at law or in equity.

In his answer, appellee prayed that plaintiffs take nothing by their suit, and by way of counterclaim requested "that the court declare the rights of the parties with respect to the ... restrictions in question to the effect that (1) the restrictions permit the construction of condominiums as contemplated by [appellee] and (2) the zoning change requested by [appellee] does not violate any such restrictions."

At trial, prior to resting, appellants nonsuited the City of Austin. The court found in favor of appellee, holding, among other things, that the restrictive covenant does not prohibit the building of multi-unit residential units on the Norwood tract. No "findings of fact and conclusions of law" appear in the record; we assume that none were requested.

In their first point of error, appellants contend that the trial court erred in not holding that the restrictive covenants prohibit the building of the multi-unit project proposed by appellee. The uncontradicted testimony indicated that each unit within the proposed condominium is to be used only as a residence: the individual units would be conveyed to people who wished to use them as dwellings; no commercial establishment would be operated inside the project; none of the units would be leased; once a certain percent of the units had been sold, the ownership of the common elements of the project would be conveyed to a homeowners association made up of individual unit owners. The issue which we must therefore resolve is whether the restrictive covenant in question, which limits the use of land to "residence purposes only," precludes the building of a multi-unit project, wherein each unit will be used for residen-

tial purposes, but wherein each unit will be occupied by a different owner. The answer must turn on the meaning of the phrase "residence purposes."

■ In construing a restrictive covenant, as with any other contractual provision, the primary rule is to ascertain the intention of the parties so that their purpose may be effectuated. *Couch v. Southern Methodist University*, 10 S.W.2d 973 (Tex.Comm.App.1928); *Knopf v. Standard Fixtures Co., Inc.*, 581 S.W.2d 504 (Tex.Civ. App.1979, no writ); *Curb v. Benson*, 564 S.W.2d 432 (Tex.Civ.App.1978, writ ref'd n.r.e.). However, in construing a contractual provision, it is the objective, not the subjective intent of the parties which must be ascertained; it is the intent expressed or apparent in the writing which controls. *Cherokee Water Co. v. Forderhouse*, 641 S.W.2d 522 (Tex.1982); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex.1968). The terms of the contract must be the conclusive factor because such terms may have a meaning different from that which either party contemplated. *City of Pinehurst v. Spooner Addition Water Co., supra*. In determining the intent of the parties, the focus must be on the actual words of the restrictive covenant being construed. *Couch v. Southern Methodist University, supra; Knopf v. Standard Fixtures Co., Inc., supra; Curb v. Benson, supra; cf. MacDonald v. Painter*, 441 S.W.2d 179 (Tex. 1969).

■ In construing a restrictive covenant, the language used by the parties will be given its plain grammatical, ordinary and commonly-accepted meaning, unless it appears that to do so will defeat the intention of the parties as clearly evidenced by other provisions of the instrument. *Stephenson v. Perlitz*, 532 S.W.2d 954 (Tex. 1976); *Moore v. Smith*, 443 S.W.2d 552 (Tex.1969). Such covenants must be considered and enforced as written, and cannot be enlarged by construction. *Gilbert v. Shenandoah Valley Improvement Association*, 592 S.W.2d 28 (Tex.Civ.App.1979, no writ). Such restrictive clauses must be construed strictly; if there is any ambiguity in

the terms of the restrictions, or substantial doubt of the meaning of such terms, the ambiguity and doubt must be resolved in favor of the free use of the land. *Davis v. Huey,* 620 S.W.2d 561 (Tex.1981). Although they are not favored, such covenants will be enforced if the language employed is clear. *Id.*

In *MacDonald v. Painter, supra,* the Supreme Court held that restrictive covenants which provided that "all improvements . . . shall be built and used for residence purposes only . . .," and that "[a]ll improvements to be erected on said premises shall be built for residence purposes, or for use in connection with residences . . .," did not bar the erection of duplexes on the restricted property. The Court quoted Annot., 14 A.L.R.2d 1376 (1950) for the proposition that

> [r]estrictions which, without more, merely limit the use of the property to "residence" purposes have generally been held not to have the effect of forbidding the erection or maintenance of multiple dwellings, the courts taking the view that such terms were directed only at the type of use to be made of the property, and not at the number of families which might make such use.

The Court held that use of the phrase "residence purposes" connotes only that the property must be used for living purposes as distinguished from business or commercial purposes. The Court distinguished other cases wherein the phrase "residence purposes" was accompanied by other language which indicated an intent to limit the number of residences.

These principles were reiterated in *Stephenson v. Perlitz, supra,* wherein the Supreme Court held that the following restrictive covenant precluded the erection of a duplex:

> All improvements to be erected upon the premises hereby conveyed shall be built and used for residence purposes, excepting such improvements as may be proper for use in connection with residences. Only one residence shall be erected upon the premises hereby conveyed and if two

stories or more, shall be of the original cost of not less than $6,000.00 and if less than two stories shall be of the original cost of not less than $2,500.00.

The *Stephenson* court noted that in this instance, the term "residence purposes" was accompanied by other limiting words. It was held that the term "one residence" was not ambiguous, and that the ordinary and commonly-accepted meaning of the phrase does not encompass an apartment building or a duplex.

In oral argument, appellants conceded that the restrictive covenants which we must here construe would not preclude the erection of a duplex, or even a quadraplex. They were unable to delineate exactly what number of separate dwelling units placed upon the restricted tract would constitute a violation of the covenants. We conclude that the covenant imposes no such limit. We have fully examined all of the restrictive covenants which apply to the Norwood tract, in addition to the one set-out above, and can find no language which would indicate an intent to limit the number of dwellings which could be placed thereon. It should be emphasized that the focus must be on whether the restrictive covenants *preclude* the erection of the proposed condominium; we are not concerned with whether the covenants *authorize* such.

■ Appellants point to the testimony of several Travis Heights residents to the effect that the common meaning of the restrictions, as they understood it at the time they purchased their lots in the subdivision (subsequent to the recording of the plat), was that the restrictions prohibited the erection of a multiple-dwelling unit. It is contended that this is "uncontroverted evidence" that the intent of the developer/grantor was to prohibit buildings similar to the proposed condominium. As we stated above, we are not concerned with the subjective intent of the original parties, but rather only with the objective intent as ascertained from the words of the written instrument. If we allowed this testimony to control, we would be improperly *adding to* the restriction, not *construing* it. Also,

while it is proper to consider the facts and circumstances surrounding the execution of a contract in construing it, it is improper to consider testimony of the parties as to what they intended the contractual language to mean, unless the contract is found to be ambiguous. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 731–32 (Tex.1981). Appellants concede that the restrictive covenant we here construe is not ambiguous.

 Appellants also point to testimony regarding the manner in which the subdivision has developed in response to the restrictive covenant. There was testimony that the subdivision is currently comprised of single-family and duplex structures. The residents have in the past successfully prevented the erection of large multi-unit structures by objecting to zoning changes at city council zoning hearings. Appellants in effect contend that the resulting neighborhood scheme gives additional meaning to the restrictive covenant, and, when so considered, the covenant precludes erection of the condominium. This bootstrap approach is improper. The neighborhood-scheme theory is simply a method by which it can be shown that a grantor intended that his common grantees and their assigns should be benefitted by and therefore be entitled to enforce specific existing restrictive covenants, despite such grantees' lack of privity of contract and privity of estate. *See Davis v. Huey, supra; Curlee v. Walker,* 112 Tex. 40, 244 S.W. 497 (1922). The manner in which a subdivision has developed *subsequent to* the creation of a restrictive covenant cannot be used to expand the meaning of that restrictive covenant. *See Davis v. Huey, supra.* The *existence of* a neighborhood scheme at the time the plat was recorded might have been here relevant, but no such evidence was presented.

Appellants rely on *Norwood v. Davis, supra,* for the proposition that the resulting neighborhood scheme is a factor relevant to the construction of the restrictive covenant. In *Norwood,* the question as to whether the particular challenged use of the property (as a motel) violated the restrictions we here construe was not presented. We there

held that the resulting neighborhood scheme was relevant to an issue which *was* presented: whether there had been a change in conditions which rendered the restrictions unenforceable. It was not necessary in that case to construe the language of the restrictive covenants.

 Appellants here complain that the trial court failed to give any consideration to the above-mentioned testimony regarding the covenant's common meaning and the resulting neighborhood scheme. We have indicated our doubt as to the relevance of such testimony. However, even if we err in this conclusion, we are unable to ascertain from the record that the trial judge did not consider the testimony. While he indicated skepticism as to the relevance of such, he did not refuse to hear any of the testimony. At the close of the case, he invited counsel to submit briefs to aid him in construing the statute. Without any "findings of fact and conclusions of law" we are unable to determine what weight the judge assigned to the testimony. We must presume that the judge, in this nonjury trial, considered the competent and disregarded the incompetent evidence. *Gillespie v. Gillespie,* 644 S.W.2d 449 (Tex.1982). We must also presume every finding of fact necessary to support the judgment. *Greenway Parks Home Owners Ass'n v. City of Dallas,* 312 S.W.2d 235 (Tex.1958). The sufficiency of the evidence is not challenged.

The question presented in this case has been answered in at least two other jurisdictions. In *Hoffman v. Cohen,* 262 S.C. 71, 202 S.E.2d 363 (1974), it was held that the erection of a condominium would violate the following restrictive covenant: "property shall be used for residence purposes only...." However, we believe that the *Hoffman* court placed undue emphasis upon the resulting neighborhood scheme. Additionally, that court assumed that the condominium units would be rented to guests, and that the property would thus become a commercial-type operation. There is here no evidence that appellee's condominium would be so utilized.

In *Parks v. Richardson,* 567 S.W.2d 465 (Tenn.Ct.App.1977), it was held that the erection of a condominium would not violate a restrictive covenant which provided that the property was "restricted for residential purposes only...." The court held that "without more, a covenant restricting property to 'residential' use does *not* prohibit construction of multi-unit residential buildings...." The court did note, however, that the establishment of a common scheme of development might require a different result in another case.

■ We hold that a restrictive covenant which provides that property "shall be used only for residence purposes" does not preclude the erection of a residential-type condominium, unless other language in the restrictive covenant indicates such an intent. Appellants' first point of error is overruled.

In the second point of error, appellants complain that the trial court erred in failing to state in the judgment that appellants' nonsuit of the City of Austin operated as a severance (and dismissal without prejudice) of the following cause of action pleaded by appellants: that the City of Austin's current zoning ordinance is invalid and unenforceable as it applies to the Travis Heights Subdivision, because it is in violation of the restrictive covenant set out above, and that it should thus be "rolled back" to class "A." Appellants are apparently concerned that the judgment could be interpreted as adjudicating this claim adversely to appellants, and that the judgment could thus be held to bar future assertions of the claim per the doctrine of *res judicata.*

The potential problem is created by the fact that although appellants took a nonsuit as to the City of Austin, they did not take a nonsuit as to any specific cause of action. Although the effect of nonsuiting the city was to dismiss them as a party as to all causes of action pleaded by appellants, appellee Small was not expressly nonsuited as to any claim. Appellants are apparently concerned that the trial court adjudicated the zoning cause of action to the extent that it was pleaded against Small. The

judgment provides in relevant part as follows:

\* \* \* \* \* \*

During the course of the trial, plaintiffs filed a motion to nonsuit the City of Austin, and such motion was granted. After hearing the evidence and considering the arguments of counsel and briefs filed by the parties, the court is of the opinion that plaintiffs are not entitled to the relief sought by them and that defendant, in his capacity as counter-plaintiff, is entitled to recover on the counterclaim. Accordingly, it is ORDERED, ADJUDGED, and DECREED that plaintiffs take nothing by their suit. It further is ORDERED, ADJUDGED, and DECREED that the deed restrictions set forth in ... plaintiffs' original petition ...:

A. Do not prohibit multi-unit residential projects on the [Norwood tract], and

B. Do not limit the number of residential living units which can be built or used on the [Norwood tract].

Nothing herein shall be construed to limit the legal authority of the City of Austin with respect to the zoning of the subject property.

All relief requested by any party not specifically granted herein is denied.

\* \* \* \* \* \*

Appellants do not contest the relief granted appellee; nor does *appellee* complain of the judgment's form (or of any other matter). Appellee's response to this ground of error is to contend that there is "no error in the trial court's judgment, since it continued to adjudicate [appellee's] counterclaim, and did not act to adjudicate claims made by [appellants] against the City which at that time were not on file due to the non-suit."

■ Since no particular form is prescribed for the declaration of rights in a declaratory judgment action, the form of a judgment rendered in such an action is sufficient if the rights of the parties can be determined from the face of the judgment, when such judgment is considered along

with the pleadings and any findings. *Downe v. Askey*, 529 S.W.2d 121 (Tex.Civ. App.1975, no writ). Here, the judgment declares that appellants nonsuited the City of Austin. We hold that the rights of appellants can be determined from the judgment, because: (1) the judgment expressly provides that it does not limit the city's zoning authority, and (2) as a result of the nonsuit, the court lacked jurisdiction to adjudicate appellants' zoning cause of action.

While such a situation is rare, there are parties whose presence is so indispensable to the resolution of a cause of action that their absence can deprive a court of jurisdiction to determine such. *Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d 200 (Tex.1974); *Petroleum Anchor Equipment, Inc. v. Tyra*, 406 S.W.2d 891 (Tex.1966); *In re E.L.P.*, 636 S.W.2d 579 (Tex.Civ.App.1982, no writ). A court loses jurisdiction to adjudicate any claim as to which such an indispensable party is nonsuited. *See Royal Petroleum Corporation v. McCallum*, 134 Tex. 543, 135 S.W.2d 958 (1940). We hold that the City of Austin was such an indispensable party as to the portion of appellants' cause of action wherein they sought to have the zoning ordinance declared invalid and to have the zoning changed to Class "A."

Texas Rev.Civ.Stat.Ann. art. 2524-1, § 11 (1965) provides as follows:

> When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the Statute, ordinance, or franchise is alleged to be unconstitutional, the Attorney General of the State shall also be served with a copy of the proceeding and be entitled to be heard.

In *Clear Lake City Water Authority v. Clear Lake Utilities Co.*, 549 S.W.2d 385 (Tex.1977), it was held that nonconformity with Section 11 does not "uniformly" constitute a jurisdictional defect. However, in that case, although the wording was broad, the Court dealt only with the first sentence of Section 11; the case did not involve a city, nor did it involve the validity of an ordinance.

In contrast, both before and after *Clear Lake*, courts have held that the failure to give the Attorney General the statutorily required notice deprives the trial court of jurisdiction to determine the validity of an ordinance. *Commissioner's Court of Harris County v. People's National Utility Co.*, 538 S.W.2d 228 (Tex.Civ.App.1976, writ ref'd n.r.e.); *Commerce Independent School District v. Hampton*, 577 S.W.2d 740 (Tex.Civ. App.1979, no writ); *cf. Lumberton Municipal Utility District v. Cease*, 596 S.W.2d 601 (Tex.Civ.App.1980, no writ) (holding that since trial court temporarily restrained enforcement of the ordinance on nonconstitutional grounds, that there was no jurisdictional defect even though Attorney General was not served, but that if court had reached merits of constitutional issue pleaded, or if court had based its order on constitutional criteria, that *Hampton* and *People's National* would control). In like manner, in *Airport Coach Service, Inc. v. City of Fort Worth*, 518 S.W.2d 566 (Tex.Civ.App. 1974, writ ref'd n.r.e.) it was held that the court lacked jurisdiction to interpret or enjoin enforcement of penal ordinances since the cities which adopted the ordinances were indispensable parties and were not joined. Although *Airport* relies on *Crickmer v. King*, 507 S.W.2d 314 (Tex.Civ.App. 1974, no writ), which was overruled in *Clear Lake*, we note that *Crickmer*, like *Clear Lake*, did not concern an adjudication of the validity of an ordinance. We conclude that a city is an indispensable party as to any action to declare its zoning ordinance invalid, and without its joinder (or as here, where it is nonsuited), the trial court lacks jurisdiction to adjudicate the action.

We think that when the judgment is considered in light of the above, it is clear that the trial court did not adjudicate appellants' zoning cause of action. The trial court did

not err in failing to specifically state that the zoning cause of action had been severed; such is necessarily implied from the provision that appellants nonsuited the city.

Additionally, we are unable to determine that appellants in any way brought this alleged error to the attention of the trial court. Texas R.Civ.P.Ann. 373 (1967) implies and assumes that the trial court should be given an opportunity to correct rocedural errors, and that a defendant waives such errors if the court is not afforded such an opportunity. *See* Guittard, *Other Changes in the Appellate Rules,* 12 St. Mary's L.J. 667, 679 (1981). In *Whatley v. Whatley,* 493 S.W.2d 299 (Tex.Civ.App.1973, no writ) it was held that although the trial court erred in ordering a lump-sum child-support award, as opposed to awarding a per-child award, that the appellant could not raise the error for the first time on appeal. In *San Antonio & A.P. Ry. Co. v. Knoepfli,* 82 Tex. 270, 17 S.W. 1052 (Tex. 1891) the plaintiff sought reasonable compensation for land which the defendant railroad had appropriated as a right-of-way. The defendant answered that it was willing to pay a reasonable compensation, and also prayed for a decree that it was entitled to possession of the land appropriated. On appeal, the defendant complained of the judgment, which decreed that plaintiff was entitled to be compensated, but was silent as to the defendant's prayer for possession. The Supreme Court held that by decreeing damages in plaintiff's favor, the judgment had the legal effect of rendering judgment for the defendant as to possession. The court refused to reform the judgment so as to make it more specific; it was held that if the defendant was dissatisfied with the form of the judgment, he should have presented to the trial court a motion to reform the judgment.

We think that appellants' second point of error goes only to the *form* of the judgment. As such, it was waived by appellants' failure to make a motion to reform the judgment, or to in some other way make the complaint known to the trial court.

Having overruled both of appellants' points of error, we affirm the judgment of the trial court.