# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00550-CV

**Appellants, Lance Sharp, Laura Sharp, Ron Kimberly Johnson and Carol Johnson
// Cross-Appellants, Richard deVarga, Katherine Margiotta, Vicki Faust
and Kimber Cavendish**

**v.**

**Appellees, Richard deVarga, Katherine Margiotta, Vicki Faust and Kimber Cavendish
// Cross-Appellees, Lance Sharp, Laura Sharp, Ron Kimberly Johnson
and Carol Johnson**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. GN301963, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The central issue in this case is whether certain deed restrictions prevent replatting of residential lots and renovations to structures located on the lots. Appellants Lance Sharp, Laura Sharp, Ron Kimberly Johnson, and Carol Johnson (collectively, the "Sharps"[1]) brought suit against appellees Richard deVarga, Katherine Margiotta, Vicki Faust, and Kimber Cavendish (collectively, the "Partnership") for violating the deed restrictions, and the Partnership counterclaimed against the Sharps for violating the same restrictions. Three motions for

---

[1] For clarity, we refer to appellants/cross-appellees collectively as the Sharps except where necessary to distinguish among appellants in reciting historical facts or in discussing counterclaims brought by appellees against the Sharps and the Johnsons individually.

summary judgment and a bench trial followed. The district court found that neither side had violated the restrictive covenants. We affirm the district court's judgment.

## Background

On November 26, 2002, Richard deVarga, Katherine Margiotta, Vicki Faust, and Kimber Cavendish formed a general partnership to purchase the subject property, two lots at 1614 Westover Road, located in the Edgemont Addition in Austin, Texas, legally described as Lots 10 and 11, Block 5 of the Edgemont Addition. At the time of purchase, existing improvements included a 3,400-square-foot residence, built in 1947, partially covering both lots. Attached to the rear of the residence by a single connected roof line of a carport was a 1,445-square-foot garage/apartment. The garage/apartment was situated on only one—Lot 10—of the two lots.

After purchasing the property, the Partnership began working on plans to renovate the main residence and to develop the garage/apartment into a separate, saleable single-family residence. The Partnership filed for, and the City of Austin granted, a plat amendment, which was officially recorded on July 9, 2003. Accordingly, the main residence is now situated on Lot 10A and has a new address of 1616 Westover Road. The former garage/apartment is now situated on Lot 11A and retains the 1614 Westover Road address. The lots are situated in flag arrangement such that, although both lots touch Westover Road, only the base of the flagpole portion of the garage house lot (Lot 11A) touches Westover Road, while the bulk of the garage house lot—the flag portion—is situated behind the main residence lot (Lot 10A). Although the Partnership has begun renovations to both structures, including additions to the garage/apartment, each structure continues to occupy the same position it has since 1947.

2

Appellants Lance and Laura Sharp reside at 1617 Northwood Road, on Lots 1 and 2 of Block 5, directly to the north of the subject property, and appellants Ron Kimberly Johnson and Carol Johnson reside at 1611 Northwood Road, on Lots 3 and 4 of Block 5, directly to the east of the subject property. On June 4, 2003, following the Sharps' unsuccessful attempts to purchase the subject property from the Partnership, the Sharps and Johnsons sued the Partnership, alleging violations of deed restrictions.

The parties filed cross-motions for summary judgment on traditional grounds, seeking a determination of whether, as a matter of law, the Partnership's replatting of the lots and renovations to the structures were violations of the deed restrictions. According to the Partnership, the unambiguous language of the deed restrictions did not include any prohibition on amending the original plat map, thereby making the plat amendment permissible. There is no violation of the deed restrictions, the Partnership argues, because only one residence stands on each replatted lot. The Sharps argue that, even if the deed restrictions contain no express language that prohibits the plat amendment, the Partnership violated the general scheme or intent of the original grantor by obtaining the replat and renovating the structures for separate sale. On December 3, 2003, the district court granted summary judgment in favor of the Partnership on all grounds, except on the question of whether the Partnership violated the restriction requiring that the garage house face Westover Road, finding that a fact issue remained as to which direction the garage house faced.

On February 11, 2005, the Sharps filed a second motion for summary judgment on the issue of which direction the garage house faced. Relying on expert testimony, the Sharps argued that, as a matter of law, any structure on the replatted Lot 11A could not face Westover Road, as

3

required by the restrictions because the structure would necessarily be behind the structure on Lot 11. On June 1, 2005, the district court denied the Sharps' motion.

On March 3, 2005, the Partnership filed counterclaims against the Sharps and the Johnsons, alleging violations of the same deed restrictions. The Partnership argued that the Sharps' maintaining and renting their garage apartment is a violation of restrictions prohibiting the use of garages as businesses and prohibiting more than one residence per lot, and that the placement of the Johnsons' residence violates the setback restriction. The parties again filed cross-motions for summary judgment. On May 23, 2005, the district court granted each motion in part and denied each motion in part. As to the Partnership's counterclaims, the court granted summary judgment in favor of the Johnsons on their affirmative defense that the setback violation is insubstantial and that equity requires the denial of injunctive relief. The court granted summary judgment in favor of the Partnership on the Sharps' affirmative defenses of lack of standing, lack of capacity, and limitations. As to the Sharps' claims, the court granted summary judgment in favor of the Sharps on the Partnership's affirmative defense of neighborhood abandonment of the deed restriction relating to "facing" Westover Road and on the Partnership's affirmative defense that the Sharps' reading of the facing restriction would result in an unreasonable restraint on alienation. The district court also determined that, as a matter of law, the Partnership was not entitled to recover attorneys' fees for defending the Sharps' declaratory judgment action.

At trial, the only remaining issues to be decided were those concerning the facing restriction as applied to the Partnership's garage house and the one-residence-per-lot restriction as applied to the Sharps' garage apartment. These issues were tried to the bench, and the court found

4

that the garage house faced Westover Road, as required by the restrictions, and that the Sharps, who had evicted their tenant, were not violating the one-residence-per-lot restriction.

**Standard of Review**

We review the district court's summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). Under the "traditional" rule 166a(c) standard, a summary judgment should be granted only when the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). When, as here, both parties file motions for summary judgment and the court grants one and denies the other, we must decide all questions presented and render the judgment that the trial court should have rendered. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

**Discussion**

General rules of contract construction apply to the construction of restrictive covenants. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). We construe restrictive covenants as a whole in light of the circumstances at the time the parties entered into the agreement, giving effect to every sentence, clause, and word of a covenant, and avoiding constructions that would render parts of the covenant superfluous or inoperative. *Id.*; *Owens v. Ousey*, 241 S.W.3d 124, 129 (Tex. App.—Austin 2007, pet. denied). Our primary obligation in construing restrictive covenants is to give effect to the true intention of the parties as expressed in the instrument. *Owens*, 241 S.W.3d at 129. We focus not on the parties' subjective intent, but on

5

their objective intent, as it is reflected in the written contract. *Tien Tao Ass'n v. Kingsbridge Park Cmty. Ass'n*, 953 S.W.2d 525, 528 (Tex. App.—Houston [1st Dist.] 1997, no pet.); *Travis Heights Improvement Ass'n v. Small*, 662 S.W.2d 406, 410 (Tex. App.—Austin 1983, no writ).

If a restrictive covenant has a definite or certain meaning, it is unambiguous as a matter of law and should be construed liberally to effectuate the parties' intent. Tex. Prop. Code Ann. § 202.003 (West 2007); *Pilarcik*, 966 S.W.2d at 478; *Owens*, 241 S.W.3d at 129. If, however, the covenant is subject to more than one reasonable interpretation, doubts should be resolved in favor of the free and unrestricted use of the premises, and any ambiguity must be strictly construed against the party seeking to enforce the restrictive covenant. *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657 (Tex. 1987). A party seeking to enforce a deed restriction has the burden of proof at trial to show that the restrictions are valid and enforceable. *Gillebaard v. Bayview Acres Ass'n*, 263 S.W.3d 342, 347 (Tex. App—Houston [1st Dist.] 2007, pet. denied).

The relevant deed restrictions applicable to the Edgemont Addition are as follows:

> No apartment nor garage as a business nor any trade, manufacturing or mercantile business of any kind shall ever be carried on or be permitted to be carried on, on said premises or any part thereof.

> No part of the above described premises shall ever be conveyed or in any way transferred, leased or rented to any person or persons of African descent, nor ever be held in any way for such person or persons, provided however, that this clause shall not prevent the employment of such persons as domestic servants, and providing for the customary accommodations for them.

> All improvements to be erected upon the premises hereby conveyed shall be built and used for residence purposes, excepting such improvements as may be proper for use in connection with residences.

Only one residence shall be erected upon each lot hereby conveyed and if two stories or more, shall be of the original cost of not less that $7500.00, and if less than two stories shall be of the original cost of not less than $5000.00.

Any residence building built on the premises hereby conveyed shall face Northwood Road or Westover Road.

The front building line of the land hereby conveyed shall be 35 feet from the property line of said premises, as same is above described; and no residence, or any part thereof, no outbuildings of any kind, and no board fence, shall ever be erected or placed upon the space between said building line and said property line, provided, however, that the steps and gallery in front of the front door of any residence may extend from said front building line toward said property line not to exceed 12 feet; and provided, further, that in case of corner lots, the side line,—not the front line—of the residence proper, including the gallery and steps may approach the property line to within 15 feet.

**The Sharps' Claims**

According to the Sharps, the restrictions, read in conjunction with the original plat map, show that the general scheme contemplated by the grantor was "to have houses sit side-by-side in each block in Edgemont and not have houses one in front of another." The Partnership argues that it has complied with each of the express restrictions and that, because of the requirement that restrictions be construed in favor of the free use of land, no general scheme can be implied to prevent its contemplated use of the land.

*One-residence-per-lot requirement*

The Sharps argue that the Partnership has violated the one-residence-per-lot requirement by removing the connecting roof line of the carport and, thereby, dividing the one original residence into two. The Partnership's position is that, although there is more than one

7

residence on each lot as originally platted, there is no violation of the deed restrictions because there is only one residence per lot as replatted.

Resolution of this issue turns on whether the Partnership's application for—and the City's granting of—the replat was permissible and effective. The parties dispute whether, in the absence of express language in the restrictions, replatting is permissible. The Sharps argue that it is not and, therefore, the Partnership is "prohibited from building more than one residence on each individual lot as the lot existed at the time of the original conveyance and as they appear on the plat map." In other words, the Sharps' argument is that under no circumstance is any replatting in the Edgemont Addition permissible.

The Sharps rely on three cases to support this argument—*Stephenson v. Perlitz*, 532 S.W.2d 954 (Tex. 1976), *Farmer v. Thompson*, 289 S.W.2d 351 (Tex. Civ. App.—Fort Worth 1956, writ ref'd n.r.e.), and *Witte v. Sebastian*, 278 S.W.2d 200 (Tex. Civ. App.—Amarillo 1953, no writ). *Stephenson* addressed the one-residence-per lot restriction in the Edgemont Addition. 532 S.W.2d at 954-55. The issue was whether the term "one residence" could be broad enough to include duplexes and apartments. *Id.* at 956-57. The supreme court held that it was not and, therefore, the one-residence-per-lot restriction prohibited construction of a duplex on a single lot. *Id.* Here, however, it is undisputed that only one residence stands on each of the lots as replatted. The issue turns not on whether more than one residence per lot is permissible—the parties agree that it is not—but whether replatting or subdividing the original lots is permissible. The one-residence-per-lot analysis in *Stephenson* is, thus, inapplicable to our analysis on this point.

8

In *Farmer* and *Witte*, the Fort Worth and Amarillo courts determined that the restrictions prohibited more than one residence on each lot as platted, holding that subsequent attempts to replat could not abrogate valid restrictive covenants. 289 S.W.2d at 355; 278 S.W.2d at 203-04. In *Farmer*, however, the restrictions themselves were expressly tied to a particular platting. The court considered the following restriction: "only one residence shall be constructed on one lot as per revised plat of said Addition." 289 S.W.2d at 353. The language of that restriction expressly references a particular one-residence-per-lot map—the revised plat. *Id.* The language of the restriction here—"only one residence shall be erected upon each lot hereby conveyed"—does not expressly incorporate a specific platting or plat map. The court's holding prohibiting replatting in *Farmer* is distinguishable based on the express wording of the restriction tying the restriction to a specific plat scheme.

The restriction in *Witte* that prohibits "more than one (1) single private dwelling . . . on any lot" is more similar to the "only one residence shall be erected upon each lot hereby conveyed" language here. 278 S.W.2d at 202. In *Witte*, the court held that "valid restrictive covenants cannot be abrogated by subsequently attempting to replat." *Id.* at 203. The court determined that, based on an examination of the restrictive covenant before it, there could be no more than one dwelling per lot as originally platted. *Id.* at 203-04. While we agree with the court's general holding that "valid restrictive covenants cannot be abrogated by subsequently attempting to replat," we do not agree that this general proposition necessarily prohibits replatting based solely on a restriction prohibiting "more than one (1) single private dwelling . . . on any lot." *See id.* at 203. More recent decisions shed light on this issue.

9

In both *Brown v. Wehner*, 610 S.W.2d 168 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.), and *Herbert v. Polly Ranch Homeowners Association*, 943 S.W.2d 906 (Tex. App.—Houston [1st Dist.] 1996, no writ), for example, the First Court of Appeals held that a one-residence-per-lot restriction did not prohibit replatting that effectively allowed more than one residence to be built on each lot as the lots were originally platted, as long as the manner in which the lots were replatted complied with the express language of the existing restrictions. Citing the established rule that all doubts in a restrictive covenant must be resolved in favor of free and unrestricted use of the premises, the Houston court explained:

> The fact that a subdivision plat was filed of record, depicting the size and number of lots in a uniform plan or scheme, does not, in itself, constitute a basis for prohibiting the resubdivision of such lots into smaller parcels.

*Brown*, 610 S.W.2d at 170-71 (citing *MacDonald v. Painter*, 441 S.W.2d 179 (Tex. 1969)).

Here, as the court did in *Brown* and *Herbert*, we resolve all doubts in favor of free, unrestricted use of the land. *See* 610 S.W.2d at 170-71; 943 S.W.2d at 908-10; *see also Wilmoth*, 734 S.W.2d at 657 (when construing restrictive covenants, all doubts are to be resolved in favor of free use of land); *Reagan Nat'l Adver. of Austin, Inc. v. Capital Outdoors, Inc.*, 96 S.W.3d 490, 493 n.2 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.) ("if there is ambiguity or doubt as to the drafter's intent, a covenant is to be strictly construed against the party seeking to enforce it and in favor of the free and unrestricted use of land"). The restrictive covenant here contains no express prohibition on replatting or subdividing. It specifically lists prohibited actions, which do not include restrictions on replatting or subdividing. Accordingly, we find no such prohibition, so long

10

as the manner in which the replatting or subdividing is done complies with the existing restrictions. *See MacDonald*, 441 S.W.2d at 184-85 (quoting *Turner v. Glenn*, 18 S.E.2d 197 (N.C. 1942)) ("covenants cannot be implied from the mere making and filing of a map showing the different subdivisions, or by selling lots in conformity therewith"); *Brown*, 610 S.W.2d at 170-71 ("The fact that a subdivision plat was filed of record, depicting the size and number of lots in a uniform plan or scheme, does not, in itself, constitute a basis for prohibiting the resubdivision of such lots into smaller parcels."); *Herbert*, 943 S.W.2d at 910 (where no express restriction prohibiting subdivision, homeowners "allowed to place more than one house on each originally platted lot, provided that all other set back requirements are met"); *see also Wilmoth*, 734 S.W.2d at 657 (when construing restrictive covenants, all doubts are to be resolved in favor of free use of land); *Reagan Nat'l Adver. of Austin*, 96 S.W.3d at 493 n.2 (ambiguities or doubts as to the drafter's intent are to be resolved in favor of the free and unrestricted use of land). As replatted, there is no dispute that there exists only one residence per lot, and therefore, there is no violation of the one-residence-per-lot requirement.

### Setback requirement

The Sharps argue that, even if replatting is permissible, the replat contemplated here is not permissible, because the manner in which the lots were replatted violates the express terms of the deed restrictions. Specifically, according to the Sharps, the flag configuration set up by the Partnership violates the requirement that "the front building line of the land hereby conveyed shall be 35 feet from the property line of said premises" and that, even if the Partnership could comply with the setback requirement, it cannot simultaneously comply with the requirement that "no

11

residence, or any part thereof, no outbuildings of any kind, and no board fence, shall ever be erected or placed upon the space between said building line and said property line."

The parties assert differing interpretations of the setback restriction, the key dispute being the location of the setback line. The Sharps' interpretation is that the applicable setback line refers to the property line of the lot being conveyed. The Partnership argues that the setback line is the line that abuts Westover Road. The specific restriction at issue provides as follows:

> The front building line of the land hereby conveyed shall be 35 feet from the property line of said premises, as same is above described; and no residence, or any part thereof, no outbuildings of any kind, and no board fence, shall ever be erected or placed upon the space between said building line and said property line, provided, however, that the steps and gallery in front of the front door of any residence may extend from said front building line toward said property line not to exceed 12 feet; and provided, further, that in case of corner lots, the side line—not the front line—of the residence proper, including the gallery and steps may approach the property line to within 15 feet.

In our view, the plain language of this setback restriction, which refers to "land hereby conveyed" rather than to "each lot hereby conveyed" reflects the grantor's intent that the building line of all houses on either Westover Road or Northwood Road be set back 35 feet from the property line of the land conveyed, not the property line of each individual lot conveyed. *See Travis Heights Improvement Ass'n*, 662 S.W.2d at 409 (language in a restrictive covenant is to be given its plain grammatical, ordinary and commonly accepted meaning, interpreted within context of entire instrument). The space in which no other building can be placed—according to a plain reading of the restriction—is within that 35-foot area. There is nothing to prevent—and

12

nothing even implying an intent to prevent—additional buildings, including residences, behind the 35-foot setback.

Given this plain-language interpretation, the replatting neither violates this restriction nor creates a situation in which the restriction will necessarily be violated. There are no structures within 35 feet of Westover Road. Indeed, the replatting changed nothing about the placement of the existing buildings, all of which remain—as they have since 1947—behind the required 35-foot setback.

### Facing requirement

The Sharps also argue that, given the replat, the Partnership cannot comply with the requirement that "[a]ny residence building built on the premises hereby conveyed shall face Northwood Road or Westover Road." Citing the Oxford English Dictionary and testimony from their expert on language, the Sharps argue:

> In order for a building to face a target, here Westover, the building must not only be pointed in the target's direction but also must stand opposite to the target so that the building can be seen from the target.

Accordingly, the Sharps contend, the Partnership cannot comply with the deed restrictions since some portion of the garage house will not be visible from Westover Road. The Partnership, on the other hand, argues that, as the district court found, a residence faces a street if it "occup[ies] a position with its front towards." The word "facing," the Partnership argues, does not include a requirement that there be an unobstructed view of the building from the target.

13

The Sharps rely chiefly on the testimony of the language expert for their interpretation of the term "facing." As noted above, however, we are required to give language in a restrictive covenant its plain grammatical, ordinary and commonly accepted meaning, interpreted within the context of the entire instrument. *See id.* at 409. The construction of a restrictive covenant is a question of law that we review de novo. *See Pilarcik*, 966 S.W.2d at 478; *Owens*, 241 S.W.3d at 129; *National Convenience Stores Inc. v. Matherne*, 987 S.W.2d 145, 149 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (expert is not competent to give an opinion or state a legal conclusion regarding a question of law because such a question is exclusively for court to decide).

We are persuaded that the plain, ordinary, and commonly accepted meaning of the word "face" is that advanced by the Partnership. A building "faces" northward if its front is situated northward, regardless of what other buildings or objects might also be in front of the building. A house with its front toward a given street "faces" that street, even if another house partially obstructs its view of the street. The rear house may "face" the house in front, but the existence of the house in front does not change the fact that the rear house also "faces" the street.[2]

The plain language of the facing restriction, read with the other restrictions, reflects the grantor's intent that the building line of all houses on either Westover Road or Northwood Road be set back 35 feet from the property line of the land conveyed and that all those houses face either

---

[2] Although we find no case specifically interpreting a similar facing restriction, we note, as the Partnership points out, that in *Fischer v. Reissig*, 143 S.W.2d 130, 131 (Tex. App.—Austin 1940, writ ref'd), this Court assumed that houses could be one in front of the other and still face the same street: "It is physically impossible to place two dwelling houses, each in compliance with all of these building restrictions, on the same lot, since in complying with the facing restrictions they will always be either side by side or one in front of the other, and in neither position can both dwelling houses simultaneously have all other structures in the rear."

14

Westover Road or Northwood Road, not Jefferson (formerly Blanco), the side street. Based on a plain reading of the restrictions, there is nothing requiring a house to have an unobstructed view of either Westover Road or Northwood Road in order to comply with the facing requirement. Given this plain-language interpretation, the replatting does not create a situation in which the restriction will necessarily be violated. Residences can be situated on the reconfigured lots such that each residence faces either Westover Road or Northwood Road.

Having determined that the replatting does not create a situation in which the facing restriction will necessarily be violated, we turn to the question of whether the garage house itself violates the facing restriction. Although, at the summary judgment phase, the district court determined whether, as a matter of law, the Partnership could—in theory—still comply with all deed restrictions following the replat, it was not until trial that the court determined whether the structures on Lots 10A and 11A actually faced Westover Road. At the bench trial, the district court received evidence on the facing issue and issued findings of fact. Specifically, the district court found:

5. The front door and primary entrance of the building located on lot 11A of the Defendants' property is located on the South side of the building, facing Westover Road.

6. The building located on lot 11A of the Defendants' property is oriented towards Westover Road.

7. The building located on lot 11A of the Defendants' property occupies a position with its front towards Westover Road.

8. The building located on lot 11A of the Defendants' property faces Westover Road.

15

9.     The building located on lot 11A of the Defendants' property fully complies with the restrictive covenant requiring residence buildings to face either Northwood Road or Westover Road.

The Sharps challenge the factual sufficiency of these findings.

A trial court's findings of fact are reviewed for factual sufficiency of the evidence under the same legal standards as applied to review jury verdicts for factual sufficiency of the evidence. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). In conducting a factual sufficiency review, we weigh all of the evidence in the record. *Id.* We overturn a trial court's findings of fact only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

The Sharps' own expert testified that, in her opinion, based on "reading lots of deeds over time" in the area at issue here as well as "lots of plats all over the state" the front of a building is determined by the location of its primary entrance. The evidence at trial also included the testimony of deVarga, the developer:

> We felt very strongly that the front door needed to be where the front door always had been on that side to honor that, and this made sense that you have the front door to the entryway.

The door to which deVarga refers in his testimony—the door that the Partnership had set up as the front door in the remodel—is oriented toward and faces Westover Road. On the other hand, the Sharps presented evidence that the main entrance to the garage house could have been the entrance facing Jefferson. The Sharps' evidence included their own testimony that they perceived

the Jefferson entrance to be the main entrance and that the garage house was most visible from Jefferson, as well as testimony that mail and postal deliveries were made to the Jefferson entrance.

Although there is some evidence to the contrary, the district court's finding that the building located on Lot 11A faces Westover Road is supported by factually sufficient evidence. Even accepting the Sharps' evidence as true, the trial court's finding of fact that the garage house faces Westover Road is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust, especially in light of the developer's own testimony that he intended the main entryway to be the door facing Westover. *See Cain*, 709 S.W.2d at 176. Although there is some evidence that the main entrance faces the side street, that evidence consists entirely of what other people—including the Sharps and various delivery people—may perceive the main entrance to be. Based on the evidence presented and our interpretation of the term "facing"—to be oriented toward—the district court's finding that the garage house faces Westover Road is supported by factually sufficient evidence, and we are not in a position to disturb the finding. *See id.*

### General scheme

The Sharps argue that, even if replatting is permissible under these restrictions, and even if the Partnership is in compliance with all of the express restrictions, this particular replat is not permissible because it violates a general development scheme contemplated by the grantor, that is implied by the express terms of the restrictions. According to the Sharps:

> By examining all of the restrictions and harmonizing them, examining the 1927 plat and requirement for a telephone easement, it is clear that the plan was to have houses sit side-by-side in each block in Edgemont and not have houses one in front of another.

17

The Sharps argue that, even if some manner of replatting is allowed, the express restrictions do not allow the sort of flag configuration—resulting in one house being located fully or partially behind another—contemplated by the replatting here. However, as already discussed, the replatting scheme proposed by the Partnership violates none of the express restrictions. In light of the requirement that we resolve all doubts and ambiguities in favor of the free and unrestricted use of the land, we cannot imply restrictions where there are none. *See Wilmoth*, 734 S.W.2d at 657; *Reagan Nat'l Adver. of Austin*, 96 S.W.3d at 493 n.2.

### *Objections to summary judgment evidence*

The Sharps also argue that their objections to the Partnership's summary judgment evidence should have been sustained, including objections to various statements made in the attached affidavits. However, the evidence admitted over their objections does not affect the outcome of the case. The evidence necessary to decide the legal issues, including the plat map, the restrictions, and the location of the residences, was undisputed, and the outcome reached did not and does not depend on the objected-to evidence. *See* Tex. R. App. P. 44.1(a); *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000) (holding that erroneous evidentiary ruling will not be reversed unless it probably caused rendition of improper judgment).

### *The Partnership's affirmative defenses*

The Sharps argue that the district court erred in granting summary judgment in favor of the Partnership on the Partnership's affirmative defenses of laches, waiver, estoppel, and

18

unclean hands. Because we have found that the Partnership's proposed replat does not violate the restrictions as a matter of law, we need not address these issues. *See* Tex. R. App. P. 47.1.

**The Partnership's Claims**

The Partnership's counterclaims against the Sharps also allege violations of the deed restrictions. Specifically, the Partnership argues that the Sharps are violating the restrictions prohibiting the use of garages as businesses and prohibiting more than one residence per lot.[3]

### One-residence-per-lot restriction and use restriction

The evidence at trial was undisputed that the Sharps were no longer renting out their garage apartment. Thus, the issue before us is whether the restrictions at issue apply to the character of the structure, which allows it to be used either as a residence or as a garage or as both, or to the use of the structure as either residence or garage.

The parties agree that, depending on the specific wording of the restrictions, the term "residence" may refer to the architectural character and form of a structure, not the use to which the structure may be put. *See Stephenson*, 532 S.W.2d at 956-57; *Deep East Tex. Reg'l Mental Health & Mental Retardation Servs. v. Kinnear*, 877 S.W.2d 550, 554 (Tex. App.—Beaumont 1994, no writ); *Permian Basin Ctrs. v. Alsobrook*, 723 S.W.2d 774, 776-77 (Tex. App.—El Paso 1986, writ ref'd n.r.e.). The Sharps argue that the restriction is a use restriction and, even assuming that the restriction is one of character rather than use, their garage apartment is a permissible structure

---

[3] The Partnership does not appeal the district court's summary judgment on its counterclaims against Ron and Carol Johnson for violation of the setback restrictions.

19

because of its character as a garage, despite the existence of the apartment above. The Partnership argues the reverse—the restriction is a character restriction, and thus, the apartment structure is a violation of the deed restrictions, despite the existence of the permissible garage below. Reading the restrictions as a whole and construing doubts in favor of free use of the land, we find no violation of the deed restrictions. *See Wilmoth*, 734 S.W.2d at 657; *Reagan Nat'l Adver. of Austin, Inc.*, 96 S.W.3d at 493 n.2.

The restrictions here expressly allow for the construction of outbuildings, including garages and accommodations for "domestic servants." Thus, at the time the conveyance was made, the structure itself would have been permissible under the restrictions as both a garage and as servant accommodations. As originally set up in the restrictions at issue here, the prohibition on apartments was a use prohibition, not a structural prohibition. Buildings that could provide accommodations were allowed for certain uses—specifically, for use by domestic servants. We do not read the restrictions at issue here to require renovation or demolition of living quarters expressly allowed once those living quarters are no longer used for those purposes. The prohibition here is on renting the accommodations, not on the mere existence of the structure. Given the undisputed evidence at trial that the Sharps have not rented their garage apartment since May 2005, the Sharps are violating neither the one-residence-per-lot restriction nor the garage-as-a-business restriction.

The Partnership argues that even if the restrictions contemplate a use restriction rather than a structural restriction, the district court erred in refusing to grant injunctive relief as the Sharps had "engaged in a settled course of conduct" and that we "may assume that it will continue such

conduct, absent clear proof to the contrary." As noted, however, it was undisputed at trial that the Sharps evicted their tenant by May 15, 2005, and that the apartment has been vacant since.

A case becomes moot if at any stage there ceases to be an actual controversy between the parties. *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988). Here, having decided that the structure itself does not violate the restrictions, there ceased to be an actual controversy between the Partnership and the Sharps on this issue in May 2005, when the Sharps evicted their tenant. Where no controversy exists, any opinion on the issue would be purely advisory. *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000). We find no error in the district court's determination that the controversy is moot.

### *The Sharps' affirmative defenses*

Because we have determined that the mere existence of the apartment above the garage is not—by itself—a violation of these deed restrictions, we need not address the district court's denial of the Sharps' affirmative defenses of mootness, standing, capacity, and limitations. *See* Tex. R. App. P. 47.1.

## Attorneys' Fees

The district court refused to award attorneys' fees to either side. As to the Partnership, the district court determined on summary judgment that, as a matter of law, the Partnership was not entitled to attorneys' fees for defending the Sharps' claims under the Uniform Declaratory Judgments Act (UDJA). As to the Sharps, the district court determined, following trial, that attorneys' fees were unavailable under the property code because the Sharps did

not prevail and that an award of attorneys' fees would not be equitable and just under the UDJA. Both sides appeal the denial of attorneys' fees.

In a proceeding under the UDJA, a court may award "reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008). However, a trial court may conclude, based on the evidence, that it is not equitable or just to award even reasonable and necessary fees. *See id.* Though a question of law, the determination of whether attorneys' fees are equitable and just under the UDJA is reviewed for an abuse of discretion. *See Bocquet v. Herring*, 972 S.W.2d 19, 20-21 (Tex. 1998). A trial court abuses its discretion if it rules arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

Although attorneys' fees were available to the Partnership, which prevailed in its defense of the Sharps' declaratory judgment action, *see Bocquet*, 972 S.W.2d at 20; *Cooper v. Circle Ten Council BSA*, 254 S.W.3d 689, 701 (Tex. App.—Dallas 2008, no pet.), the Partnership was unsuccessful on its counterclaims to enforce the restrictive covenants against the Sharps. The district court acted within its discretion in finding the Partnership "not entitled" to recover fees under the UDJA. *See Bocquet*, 972 S.W.2d at 20-21. As to the district court's refusal to award attorneys' fees to the Sharps, we have determined that the Partnership has not violated any applicable deed restrictions, and therefore, we affirm the district court's denial of attorneys' fees to the Sharps.[4]

---

[4] The Sharps do not appeal the district court's finding of fact that an award of attorneys' fees would not be equitable and just or the district court's conclusion of law that they have no right or entitlement to attorneys' fees under the UDJA.

22

*See* Tex. Prop. Code Ann. § 5.006 (West 2004) (providing for award of attorneys' fees to prevailing party in a breach of restrictive covenant action).

## Conclusion

Having found no violation of the deed restrictions, we affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Justices Puryear, Pemberton and Waldrop

Affirmed

Filed:   January 8, 2010